## THE PEOPLE v. WILLIAM C. LIPHARDT.

*Bribery—Inducement—Evidence.*

1. One who has committed a criminal act should not be acquitted because induced to do so by another. It is only when the criminality of the act is shown to be absent by the fact of the inducement that such proof justifies acquittal.[1]

2. Respondent was informed against for receiving a bribe upon an agreement to vote for the adoption of a certain school seat at a prospective meeting of the board of education, of which he was a member. On the trial the testimony of one of the witnesses for the people, who was agent for one of the competing seating companies, showed that the witness encouraged another member of the board of education to advise the respondent that the witness would accept a proposition from the respondent to sell his vote for a given sum; that the witness informed the mayor of the city of such fact; that the mayor was willing to aid in detecting the respondent, if he should make such a proposition, and to that end an interview was arranged for between the witness and the respondent within hearing of a stenographer and a police officer, whose presence was unknown to the respondent, at which, as claimed, the criminal arrangement was made. And it is held that the respondent was entitled on the cross-examination of the witness to all of the facts that led up to the transaction, including the interviews with the mayor and police officer in relation to the proposed detection of the contemplated bribery, and the names of all who had to do with it, as bearing upon the credibility of the witness' testimony, and perhaps furnishing the means of refuting it.

Error to recorder's court of Detroit. (Chapin, J.) Argued March 1, 1895. Decided April 16, 1895.

Respondent was convicted of the crime of receiving a bribe, and sentenced to imprisonment in the State

[1] Instigation to a crime for the purpose of detecting it is the subject of an extensive note to *Connor v. People* (Colo.), 25 L. R. A. 341.

pr'son at Jackson for 5 years. Judgment reversed. The facts are stated in the opinion.

*Thomas J. Navin* and *Edwin Henderson (George Gartner*, of counsel), for respondent.

*Allan H. Frazer*, Prosecuting Attorney, and *Henry A. Mandell*, Assistant Prosecuting Attorney, for the people.

HOOKER, J. The defendant was convicted of receiving a bribe upon an agreement to vote for the adoption of a certain school seat at a prospective meeting of the board of education of the city of Detroit, of which board he was a member. The outline of the case, as claimed by the people, is that the Manitowoc Seating Company, a corporation, through its agent, one Atcherson, was a competitor for the contract for seats to be purchased. Atcherson had a conversation with one Davis, a member of said board of education, in which Davis had said that, if Atcherson would give the defendant $100, of which $25 was to be paid in cash in advance, and the other $75 after the contract was signed, the defendant would vote for Atcherson's desk at the next meeting of the board. Atcherson thereupon informed the mayor that there was crookedness upon the part of some members of the board, and he expressed a desire to detect it, and caused certain members of the police department to confer with Atcherson about it. A room was secured by Atcherson adjoining his own in the hotel, and some officers and a stenographer were placed therein, to overhear an interview in Atcherson's room when it should occur. Holes were made in the walls between the two rooms to aid in hearing and seeing what should take place. An interview was had, in which the witnesses testify that the arrangement was stated by the defendant as understood by him, in conformity to the arrangement with Davis, above mentioned, and Atcherson then and there paid him and he

105 MICH.—6.

received $25 in money upon his promise to vote for Atcherson's seat. The defendant denied that he had any such interview, and sought to prove an *alibi*, which was substantially all of the material testimony offered in his behalf, but in this Court most of the questions arise upon the rather inconsistent theory that he was decoyed into the commission of the act through a conspiracy between Atcherson, the mayor, and the police. Some 70 assignments of error appear in the record, and we cannot conveniently discuss each separately, but will refer to the more important only.

Atcherson was the main witness for the people, and testified to most, if not all, of the principal facts relied upon by the prosecution. His credibility was a proper subject for investigation by cross-examination. The defense should have been permitted a full and searching cross-examination in relation to all that he did in connection with the affair, and were entitled to go into his relations with all who appeared or could be shown to be connected with the transaction. He testified that he had "figured on a scheme in his mind to detect them, for he knew that they would come to him with a proposition." He said that upon his arrival, three months before this transaction, a man, not a member of the school board, talked with him, and asked what he would give to secure the contract. He declined to state his name, as he said it had no connection with the matter. The court refused to compel an answer. He testified that he was satisfied from what was said to him that he would not be prosecuted, and that the mayor made him a promise of a similar nature within 48 hours before the event. He said that he talked with him concerning what he was going to do, and told him "all he had discovered, the whole story from beginning to end." He was asked if he understood or was told that, if they resigned, they would not be arrested for this transaction, and his answer was excluded under objection and exception. The court was in error in these rulings, as the defend-

ant's counsel were entitled to all of the facts that led up to this transaction, including the interviews with the mayor and police officers in relation to the proposed detection of bribery, and the names of all who had to do with it; not that it necessarily tended to establish a conspiracy, but that it might show one, or, at all events, might bear upon the credibility of Atcherson's story, and perhaps furnish the means of refuting it.

The testimony of Atcherson may fairly be said to show that he encouraged Davis to advise Liphardt that he would accept a proposition from Liphardt to sell his vote for $100; that he informed the mayor of this; that the mayor was willing to aid in detecting the defendant, if he should make such proposition, and that he caused the officers to interest themselves in the matter. It is contended that this was a conspiracy to cause crime to be committed, and that it was criminal on the part of all concerned, and the court was asked so to instruct the jury, which he declined to do. The defendant's counsel claimed that the defendant had no intention to commit this offense until it was suggested by Atcherson, under his arrangement with the mayor to detect "boodling" by members of the board. It was also claimed that the mayor vetoed a resolution of the board selecting another seat, to give an opportunity for this scheme to be carried out, and that the mayor's interest in the matter arose from a desire for vacancies upon the board, that he might fill the same by appointment. It was also said that, if these things were true, the defendant could not be convicted of the offense, for the reason that he was induced to commit the act, and did not himself originate the plan. Whether defendant's claim was true ·could only be determined by the jury. He had the right to show the facts by evidence in his own behalf, or by cross-examination, as bearing upon the credibility of Atcherson and other witnesses. We know of no case that holds that· one who has committed a criminal act should be acquitted

because induced to do so by another. It is merely when the criminality of the act is shown to be absent by the fact of the inducement that such proof justifies acquittal. In cases of alleged larceny, where the master has directed a servant to deliver his property to a thief, or burglary, where he has directed the admission of the burglar, the principal element of the offense is lacking; in the former there is no felonious taking, in the latter no felonious breaking and entering. The doctrine is stated in 1 Bish. Cr. Law (2d ed.), §§ 344, 345. The author says:

"The cases of greatest difficulty are where one, suspecting crime in another, lays a plan to entrap him; so that, even if there is consent, it is not within the knowledge of him who does the act. Here we see, from the principles already discussed, that, supposing the consent really to exist, though unknown to the other, no legal crime is committed. But exposing property, or neglecting to watch it, under the expectation that a thief will take this property, or furnishing any other facilities or temptations to such a wrong-doer or to any other, is not a consent in law. A common case is that of burglars, who, intending to break into a house and steal, tempt the servant of the occupant to assist them, and the servant, after communicating the facts to his master, is authorized to join them in appearance. Under such circumstances, clearly the burglars are not excused for what they personally do; but, it seems, if the servant opens the door while they enter, they are not to be held criminally for this breaking. Yet, if he opens it at their request, why should they not be held, he being deemed their agent for this purpose, rather than the master's? An Irish case appears to go further than this query, for it even decides that, where persons intending to commit burglary knock at the door of the prosecutor, who, apprised of their purpose and prepared for them, himself opens it, and on their rushing in and locking the door seizes and secures them, the offense of burglary is committed. And the doctrine as to the breaking seems to be that a consent to it, obtained by fraud or by force, avails not the defendant. Also, according to decisions in North Carolina, if one delivers an article to his slave, and then stands by to detect

a person trading for the article with the slave, contrary to the act of 1817, this circumstance does not make the trading lawful.

"But where the master goes further, and, instead of merely attempting to detect a crime already contemplated, directs his servant to deliver property to a supposed thief, who had not formed the particular design to steal it, this latter person, taking it with felonious intent from the servant, commits not a larceny."

But in this case there is no opportunity for the claim made. If the facts were shown as stated, the defendant cannot excuse the receipt of money as a consideration for promised official action, merely because he was solicited by Atcherson, even if it were done at the instigation of the officers of the city, who have no right to compromise public justice in any such way. *People v. Laird*, 102 Mich. 135.

We think it unnecessary to review the several alleged errors upon the requests. There were many of them; among them one that the mayor and Atcherson were guilty of criminal conspiracy; and it is apparent that the policy of the defendant's counsel was to attack the mayor and Atcherson. There was no occasion for this further than to develop the facts in the case tending to throw light upon the conduct and motives of Atcherson or other witnesses, whose credibility was for the jury. The people as well as the defendant should have the right to have the vital questions in the case submitted to the jury without being complicated by irrelevant requests to charge. If this defendant committed the offense charged, public interests demand his conviction, and it was unnecessary to determine in this case whether the acts of the mayor and Atcherson amounted to a criminal offense or not. Their relation to the case was a proper subject of inquiry and discussion for one purpose only, viz., that of ascertaining whether the defendant was guilty of bribery or not.

For the undue restriction of cross-examination we

feel constrained to reverse the judgment. A new trial is therefore directed.

LONG and MONTGOMERY, JJ., concurred with HOOKER, J. McGRATH, C. J., concurred in the result. GRANT, J., did not sit.