[No. 7741. Decided March 9, 1909.]

## THE STATE OF WASHINGTON, *Respondent*, v. H. C. LITTOOY, *Appellant*.[1]

CONSTITUTIONAL LAW—DUE PROCESS—PHYSICIANS—DENTISTRY—REQUIRING LICENSE—REASONABLENESS. Requiring a diploma from a dental college as a prerequisite for examination for a license to practice dentistry does not violate the 14th Amendment and is not an unreasonable exercise of the police power, although there is no such college in the state, and although the applicant might be as qualified and able to pass the examination as any holder of a diploma.

INDICTMENT AND INFORMATION—SUFFICIENCY—PRACTICING DENTISTRY WITHOUT LICENSE. An information for practicing dentistry without a license, in the language of the statute, is sufficient without alleging the nature of the disease or lesion or the treatment.

WITNESSES—CROSS-EXAMINATION. It is not error to limit the cross-examination of a prosecuting witness who had dentistry done for the purpose of prosecuting, where the range of inquiry showed the motives of the witness and tested his credibility.

PHYSICIANS—DENTISTS—PRACTICING WITHOUT A LICENSE—PROSECUTION—EVIDENCE OF INDUCEMENTS. That a witness went to a dentist's office and had a cavity filled, is not evidence that he offered inducements to the defendant to commit the crime of practicing without a license.

SAME—DEFENSES. That a witness had dentistry work done with a view to prosecuting the dentist for practicing without a license, is not a defense nor any objection to conviction.

[1]Reported in 100 Pac. 170.

SAME—ABSENCE OF LICENSE—EVIDENCE—ADMISSIBILITY. Bal. Code, § 3030, making the certificate of the county auditor that no license to the defendant to practice dentistry was on file in his office *prima facie* proof of the absence of such license, is not exclusive and does not preclude evidence of the deputy auditor that there was no such certificate of record.

SAME—EVIDENCE OF TREATING OF DISEASE—SUFFICIENCY. That a dentist filled a cavity in the teeth of the prosecuting witness is sufficient evidence that he treated a disease or lesion of the teeth, within the statute prohibiting the same without first securing a license.

Appeal from a judgment of the superior court for King county, Frater, J., entered June 6, 1908, upon a trial and conviction of practicing dentistry without a license. Affirmed.

*Reynolds, Ballinger & Hutson, Kitt Gould,* and *Charles M. Fouts,* for appellant.

*Kenneth Mackintosh* and *John H. Perry,* for respondent.

GOSE, J.—The appellant was tried, convicted, and sentenced upon an information charging him with the crime of practicing dentistry without a license. From such conviction he is prosecuting this appeal.

The charging part of the information is as follows:

"He, the said H. C. Littooy, in the county of King, state of Washington, on the 25th day of March, A. D. 1908, then and there being, did then and there wilfully and unlawfully practice dentistry and did perform operations or parts of operations, and did treat diseases or lesions of the human teeth and of jaws, without registering and procuring a license as required by law, in that he, said H. C. Littooy, did then and there wilfully and unlawfully for a fee, salary and reward, paid to himself, for the acts and operations, and parts of operations, herein mentioned, treat disease and lesion of the human teeth of one F. B. Reynolds, said F. B. Reynolds then and there being a living human being, and then and there being afflicted with a disease and lesion of his said teeth, said defendant then and there not having, as required by law, first procured and filed for record in the office of the county auditor of said county, a certificate per-

mitting and authorizing the said defendant to practice dentistry within the state of Washington."

Eighteen errors are assigned. The appellant groups assignments 1, 2, 14, 15, and 16, and under them urges that the dental law is unconstitutional as violative of the fourteenth amendment of the Federal constitution, in this: First, that the requirement that a party must have a diploma from a dental college in good standing as a prerequisite to his right to an examination is unreasonable; second, that there being no dental college in this state, the requirement for such reason is unreasonable; and third, that the only reasonable test is one's ability to pass the required examination. The appellant sought to raise the last two points by a special plea of fact, which was stricken. In support of these three propositions, which are argued together, it is urged that the holder of a diploma is required to pass an examination as to his qualifications, and that it is the examination and not the possession of the diploma that ultimately determines his qualification to practice dentistry; that the holder of the diploma becomes privileged to the extent that he has a right to an examination to determine his qualification, whilst others, equally qualified but having no diploma, are denied this right; that a law which prevents a qualified person from proving his fitness, thereby excluding him from engaging in a usual occupation which he has a natural right to pursue, is not reasonable.

It is insisted that the facts set forth in the special plea distinguish this case from the former decisions of this court. The law has been held constitutional in the following cases: *State ex rel. Smith v. Board of Dental Examiners*, 31 Wash. 492, 72 Pac. 110; *In re Thompson*, 36 Wash. 377, 78 Pac. 899. We quote the following from *State ex rel. Smith v. Board of Dental Examiners, supra*, at page 495:

"For years the policy of the state prior to the passage of this act had been to require all persons engaged in the practice of dentistry to pass an examination before the dental

board of examiners, and for one to even be admitted to such examination he must have been either a dental college graduate, or a practitioner for ten years;"

and from page 497:

"The wisdom of such regulations, pertaining not only to dentistry, but also to the practice of medicine and surgery, is apparent. It is of the highest importance to the state that suffering and afflicted humanity shall not be subjected to the care and treatment of unlearned and unskilled persons. In its effort to prevent such a misfortune to its people, the state may adopt a standard for the test of fitness to engage in the work of what should be a learned profession. When that standard is adopted, those who assume to do the work of such a profession must prove their fitness by the test of such standard."

In *In re Thompson, supra,* 379, the court said:

"The dental board is authorized by this act to examine all applicants for certificates. To be eligible to this examination, the applicant must possess a good moral character, and present a diploma from some dental college in good standing, and give evidence of the lawful possession of such diploma."

Again, at page 380, it is said:

"If we are correct in our conclusion that the legislature, in the exercise of its police power, has authority, under the state and Federal constitutions, to regulate the practice of dentistry within the state by reasonable rules, it follows that the legislature may provide that an applicant must be possessed of a diploma from some dental college in good standing. There is nothing unreasonable in this requirement, nor in the other requirements named in the act. Such diploma is evidence of the ability of the applicant to practice dentistry. It is not conclusive of such ability, and the dental board may, therefore, provide reasonable rules for determining the actual ability of the applicant."

If the second point raised by the special plea is tenable for the reason that there is no dental college in the state, then the first point is well taken, and there being no dental

college in the state, it is not competent for the law-making body to require a diploma, either as an evidence of fitness to practice dentistry, or as a prerequisite to the right to have an examination.  If the want of a dental college in the state may be used as a test for determining whether the law is a reasonable exercise of the police power, then it is unconstitutional as an entirety, and the legislative power in a given state to safeguard the public health respecting the practice of both medicine and dentistry would depend, not upon the state's needs, but upon the presence or absence of a college, and the regulation would be valid in one state and a nullity in another.  One who has no diploma has no just cause for complaint, because the law requires one who has a diploma to pass a satisfactory examination before he can receive a certificate entitling him to practice his profession.  We conclude that this case is not distinguishable from the rule announced in the cases *supra.*

It is next urged that the information is defective in that it does not allege the nature of the disease and lesion, nor the nature of the treatment given by the appellant.  The offense is charged in the language of the statute, and the information is therefore sufficient.  *State v. Lewis,* 42 Wash. 672, 85 Pac. 668; *State v. Smith,* 40 Wash. 615, 82 Pac. 918; *State v. Ryan,* 34 Wash. 597, 76 Pac. 90.

Assignments 3, 4, 5, 6, 7, 8, 9, and 10 are grouped, and present the question whether the appellant was unduly limited in his cross-examination of the complaining witness, the contention being that the witness had the dental work done with the view of prosecuting the appellant therefor.  The court permitted the appellant to ask the witness whether such was not his purpose, and he answered that it was not.  The range of inquiry in this respect was wide enough to show the motives of the witness and to test his credibility.  This was all the law required.  The verity of his answers was a fact for the jury to determine.

The 11th assignment is predicated on the refusal of the court to instruct the jury as follows:

"If you find from the evidence that F. B. Reynolds, for whom it is alleged defendant performed the work charged in this cause, solicited defendant to perform said work with the purpose of inducing said defendant to commit a crime, and that the acts performed by defendant, if he performed any of the acts charged in the information, were performed in pursuance and in consequence of said inducements, you will find the defendant not guilty."

The court might properly have refused this instruction on the ground that there is no evidence in the record to support it. There is no evidence that any inducements were used other than that the witness went to the office of the appellant, had him fill a cavity in his tooth, and paid him for the service. Opportunity and inducement are not equivalent terms. *Evanston v. Meyers*, 70 Ill. App. 205; *Love v. People*, 160 Ill. 501, 43 N. E. 710, 32 L. R. A. 139, and *Saunders v. People*, 38 Mich. 218, are cited in support of the requested instruction. The first of these cases was reversed on appeal. The next two were on the question of burglary, where the crime is not complete without a trespass, and where it was in effect held that there cannot be a trespass when the entry is made upon invitation. In *Evanston v. Myers*, 172 Ill. 266, 50 N. E. 204, the prosecuting witness bought beer from the defendant with money furnished by a society which had been supplied by the chief of police to enable the witness to buy from whomsoever was willing to sell, for the purpose of detecting violations of the city ordinance under which the accused was prosecuted. The view of the court is well stated in the following language:

"The appellate court, in passing upon this case, found that the beer was sold as alleged in the complaint, but held that inasmuch as the city furnished the money, and the purchaser was in its employ to discover violators of the ordinance, the offense was one induced by the city of Evanston, and the defendant was not punishable therefor. Under the

facts of the case, as we understand them, we cannot concur
in this view.    The offense, if one was committed, consists
in the unlawful selling of intoxicating liquor.    The defend-
ant was passing through an alley in Evanston, with a load
of beer, when Denvir hailed him, asking, 'How is it for a
case of beer?' to which he replied, 'It is all right.'    The
money was paid, and the beer handed out.    It is clear that
Denvir, in making this purchase, used no fraud, deceit, or
inducement, other than a willingness to buy.    It also ap-
pears, uncontradicted, that appellee had sold beer to Denvir
at other times in violation of the ordinance in question.    On
this occasion he was willing to do so again.    The offense of
selling this beer having been voluntarily committed, is it
reasonable to say that the willingness of Denvir to purchase,
for whatever purpose or object, constitutes a sufficient in-
ducement to appellee to make the sale, so as to excuse the act?
We think not.    The offense consisted, not in the buying,
but in the selling, of the beer.    A number of cases are cited
to sustain the theory of appellee's defense, but in those cases
the criminal acts charged were not wholly voluntary on the
part of the defendant, but were induced in some measure by
the acts and conduct of the prosecuting witnesses.    The
principle here involved is well announced in the case of *Grimm
v. U. S.*, 156 U. S. 604, 15 Sup. Ct. 470.    In that case a
postoffice inspector suspected Grimm of being engaged in
the business of selling obscene pictures, and sending them
through the mails.    Under assumed names, the inspector wrote
for a supply of the pictures, and received them from defend-
ant.    In defense of the charge made against him, defend-
ant insisted the conviction should not be sustained, because
the letters were deposited in the mails at the instance of the
government, and through the solicitation of one of its of-
ficers.    Upon this point the court said: 'It does not appear
that it was the purpose of the postoffice inspector to induce
or solicit the commission of a crime, but it was to ascertain
whether the defendant was engaged in an unlawful business.
.   .   .    The law was actually violated by the defendant.
He placed letters in the postoffice which conveyed information
as to where obscene matter could be obtained, and he placed
them there with a view of giving such information to the
person who should receive those letters, no matter what his
name; and the fact that the person who wrote under these

assumed names, and received his letters, was a government detective, in no manner detracts from his guilt.' "

In *State v. Lucas*, 94 Mo. App. 117, 67 S. W. 971, the prosecuting witness was furnished money by citizens for the purpose of buying whiskey, with the view. of prosecuting the seller. The prosecuting attorney knew of this arrangement, and the whiskey was purchased with the money so furnished. In discussing the question as to whether such facts constituted a defense, the court, at page 121, said:

"To discover and bring to justice those who subtly, clandestinely, and illegally dispense liquors, the methods resorted to in this case are sometimes indispensable, and when nothing more than the truth is elicited, and the guilty are brought to justice through their efforts, a valuable service to the community will have been rendered."

This view has received indorsement in the case of *Price v. United States*, 165 U. S. 311, 315, 17 Sup. Ct. 366, 41 L. Ed. 727, in the following language:

"It appears from the bill of exceptions that the Government inspector who instigated the prosecution in this case had been informed that the statute was being violated, and for the purpose of discovering the fact whether or not the plaintiff in error was engaged in such violation, the inspector wrote several communications of the nature of decoy letters, which are set forth in the record, asking the plaintiff in error to send him through the mail certain books of the character covered by the statute, which the plaintiff in error did, as is alleged by the prosecution and as has been found by the verdict of the jury. This has been held to constitute no valid· ground of objection. *Rosen's case, supra*, 161 U. S., at page 42; *Andrews v. United States*, 162 U. S. 420."

In *People v. Liphardt*, 105 Mich. 80, 62 N. W. 1022, the defendant was convicted of receiving a bribe. A plan of action had been arranged between the chief witness for the state and the town mayor, whereby a third party advised the defendant that the chief witness would accept a propo-

sition from the defendant to sell his vote as a member of the school board for $100. In furtherance of the plan, the chief witness secured a room, so arranged that the witnesses, whom he caused to be secreted, could overhear a conversation between himself and the defendant. At this interview the defendant accepted money paid by such witness, upon the promise of the former to vote in the way the witness desired. These facts urged as a defense are treated by the court, at page 85, as follows:

"If the facts were shown as stated, the defendant cannot excuse the receipt of money as a consideration for promised official action, merely because he was solicited by Atcherson, even if it were done at the instigation of the officers of the city, who have no right to compromise public justice in any such way. *People v. Laird*, 102 Mich. 135, 60 N. W. 457."

See, also, *People v. Murphy*, 93 Mich. 41, 52 N. W. 1042; *People v. Hanselman*, 76 Cal. 460, 18 Pac. 425, 9 Am. St. 238; *State v. Sneff*, 22 Neb. 481, 35 N. W. 219.

Assignment 12 raises the question as to the manner of proving the absence of a certificate to practice. Bal. Code, § 3030 (P. C. § 4476), makes the certificate of the auditor of the county, to the effect that there is no certificate on file in his office, "*prima facie* proof that said person is not entitled to practice dentistry in such county." This method of proof is not exclusive. In permitting the deputy auditor to testify that there was no such certificate of record in favor of the appellant, no error was committed.

Assignments 13, 17, and 18 present the question of the sufficiency of the evidence to support the verdict. Under this head it is argued that there is no evidence that the appellant treated a disease or lesion of the teeth of the witness. The evidence is that the appellant filled a cavity in the teeth of the witness, and that he was occupied about twenty minutes in the work. This was sufficient, under the rule announced in *State v. Sexton*, 37 Wash. 110, 79 Pac. 634.

There being no error in the record, the case will be affirmed.

RUDKIN, C. J., CHADWICK, FULLERTON, MOUNT, CROW, and DUNBAR, JJ., concur.