[No. 22157.   Department Two.   May 27, 1930.]

THE STATE OF WASHINGTON, *Respondent,* v. CLYDE
RAGAN, *Appellant.*[1]

*A. C. Durham, Abrams, Healy & McCush,* and *Paul Carrigan,* for appellant.

*Frank M. Allyn* and *Lawrence M. Keplinger,* for respondent.

FULLERTON, J.—The appellant, Ragan, was informed against by the prosecuting attorney of Whatcom county for the crime of bootlegging. On a trial before a jury, he was found guilty of the crime charged, ad-

[1]Reported in 288 Pac. 218.

judged guilty by the court, and sentenced to a term in the penitentiary. For a reversal of the judgment and sentence, the appellant makes a number of contentions, which we shall notice in the order in which he presents them.

The appellant, as the evidence on the part of the state tended to show, lives in the northern part of Whatcom county, near the international boundary line. He was suspected by the sheriff of the county to be engaged in the illicit traffic in intoxicating liquors. One Hubbard, who had had a long experience as an undercover man in the Federal prohibition service, was employed as a deputy sheriff and sent to inquire into his conduct. He went to the appellant's home, and, meeting the appellant, represented to him that he was a bootlegger engaged in the liquor trade at Aberdeen, and desired to obtain liquor from a source where he could avoid the profits of the middleman.

By these and other representations, he disarmed the appellant of any suspicions he may have had, and entered into an agreement with him to purchase six cases of intoxicating liquors at a stipulated price, to be delivered that evening at a place to be selected when Hubbard returned to the house for the liquor. Hubbard then left the house and returned again in the evening, driving to the place in an automobile. As he reached the appellant's house, the appellant came out and got into his car, when they began to discuss the possibilities of future deliveries; Hubbard telling the appellant that he could use about one hundred cases a week, and wanted the appellant to furnish it.

While they were talking over the matter, a man came along and made an enigmatical remark to the appellant, leaving somewhat abruptly. After the man had gone, the appellant told Hubbard that he could not make the delivery that evening, as "the law was on

the road.'' Hubbard then increased his order to twenty-six cases, and an agreement was made for its delivery at a garage in Blaine at seven o'clock on the following morning. Hubbard appeared at the place directed, and was there directed to drive to another garage, where he found the appellant with the liquor he had agreed to deliver. In the process of delivering it, the appellant was arrested by Hubbard and shortly thereafter turned over to the other deputies from the sheriff's office.

The appellant told an entirely different story. In substance, he testified that he had never before engaged in the liquor traffic; that Hubbard approached him, and solicited him to join in the business of running intoxicating liquors across the border line; that Hubbard represented himself to be a deputy sheriff, and that he could by means of his office protect him from interference by the sheriff's office, the Federal officials, and the border patrol; that he at first refused the offer, but, after much persuasion, consented to join with him. He further testified that Hubbard came to his place on the next day and told him he was going to, have some liquor brought across the line that night, and asked him to meet the person who would bring it at a place named, transfer the load to his own car and haul it to a garage in Blaine; that he met the man at the place, took his load of whiskey and drove it to the garage in Blaine to which he was directed by Hubbard, and was there arrested by Hubbard.

It was shown that Hubbard had for a long time been engaged in ferreting out dealers in intoxicating liquors as an agent of the Federal government. Much of the detail of his activities in this respect was brought out at the trial on his cross-examination, and in addition thereto a number of witnesses were sworn who testified to his bad reputation for truth and veracity.

■ It is the appellant's first contention that there is no evidence in the record worthy of belief on which the judgment of conviction can rest. It is argued that the state's case rests principally on the testimony of its witness Hubbard, and that this witness was so successfully impeached as to render it unworthy of belief, and to require its withdrawal from the consideration of the jury. But we think the contention hardly merits serious argument. Whether the witness was effectually impeached, or whether his evidence was entitled to credence notwithstanding the impeaching testimony, were questions of fact for the jury, not questions of law for the court.

■ It is next contended that the appellant was entrapped into the commission of the offense of which he was convicted. It may be that, were his own testimony to be believed, there would be some foundation for the contention. But it is not to entrap a person into the commission of a crime, merely to furnish him with an opportunity to commit the crime. *State v. Littooy*, 52 Wash. 87, 100 Pac. 170, 17 Ann. Cas. 299. The evidence on the part of the state shows that the police officers did no more than this, and it was for the jury to say which of the contradictory statements was to be believed.

■ Shortly after the arrest of the appellant, he made certain statements to the county sheriff thought to show an admission of guilt. The sheriff, in detailing the statement to the jury while on the witness stand, purported to relate the entire conversation had between them, his own part therein as well as the appellant's part. The sheriff, in relating the conversation, testified that he said to the appellant:

"I am mighty glad to meet you, Clyde. It cost me a whole lot of money to meet you. You have ruined more boys than any other man in Whatcom county."

When this statement was made, the appellant moved the court to strike it, and instruct the jury to disregard it. The court at the time refused to grant the motion or give the requested instruction. Later on, however, at the close of the appellant's case, the court recalled the matter to the attention of the jury, telling them that it was not evidence against the appellant, but a mere accusation, and instructed them to disregard it and draw no inference of any kind from it as to the guilt or innocence of the appellant. The appellant assigns error on the action of the court, and in his brief makes this comment:

"We contend that the court erred in not instructing the jury at the time that they should disregard this purported conversation, but allowed it to stand until all the evidence was in, and then inadvertently impressed this particular evidence indelibly on the jury's minds, to disregard Sheriff Fraser's statement about 'ruining more boys than anybody else in the county,' for in attempting to withdraw that evidence, the court commented on the evidence in such a way that it did nothing more or less than to impress it on the minds of the jury in telling them to disregard it."

But we think the appellant draws an unwarranted inference from the incident. The object of the testimony of the witness was to show an admission of guilt on the part of the appellant. The important consideration therefore was the statements of the appellant. What the witness said to the appellant was of no concern except in so far as it tended to explain and make clear to the jury the statements of the appellant, and it is hardly possible that the jury, as intelligent men and women, could have understood it otherwise. The court could, we think, have safely let the matter stand as it left it when the appellant moved against it; but surely it committed no error when it recalled

it again to the attention of the jury later, and gave the cautionary instruction.

■ The appellant complains of the argument made by the prosecuting attorney to the jury. But, so far as the record discloses, we do not find that the attorney exceeded the bounds of legitimate argument. While the appellant complains of certain expressions of the attorney, it can be said of them as we said of similar expressions made by the prosecuting officer in *State v. Peeples,* 71 Wash. 451, 129 Pac. 108:

"The connection in which these remarks were made [the remarks of the prosecuting attorney in his argument to the jury] is not preserved in the record, but even dissociated from context, they evince an argumentative character and are not such expressions of individual opinion of the appellant's guilt, independent of the testimony of the case, as to constitute misconduct. *State v. Armstrong,* 37 Wash. 51, 79 Pac. 490; *State v. Marion,* 68 Wash. 675, 124 Pac. 125; *People v. Hess,* 85 Mich. 128, 48 N. W. 181; *People v. Welch,* 80 Mich. 616, 45 N. W. 482. While intemperate assertions of opinion not based upon any evidence will never be tolerated, it is none the less in the interest of a sound public policy that prosecuting officers be permitted a reasonable latitude in argumentative deduction from the evidence. That is all that these remarks upon their face purport. They do not constitute prejudicial error."

We find no error in the record, and the judgment will stand affirmed.

MITCHELL, C. J., MAIN, HOLCOMB, and PARKER, JJ., concur.