[No. 30317. Department Two. February 26, 1948.]

THE CITY OF SEATTLE, *Respondent*, v. LESTER C. GLEISER, *Appellant.*[1]

*Ervin F. Dailey,* for appellant.

*A. C. Van Soelen, Arthur Schramm,* and *Charles L. Conley,* for respondent.

JEFFERS, J.—Defendant, Lester C. Gleiser, was charged with the violation of an ordinance of the city of Seattle, in that he did wilfully and unlawfully aid and abet June Simms to agree to perform an act of prostitution, in the city of Seattle, on or about September 4, 1946. The cause came on for trial before the court and jury, and on June 18, 1947, the jury returned a verdict of guilty as charged. Defendant duly filed motions in arrest of judgment and for new trial, which motions were by the court denied on June 28, 1947, and, on the date last mentioned, judgment on the verdict was entered, and defendant was sentenced to serve ninety days in the city jail. Defendant has appealed from the judgment and sentence imposed.

[1]Reported in 189 P. (2d) 967.

While appellant makes six assignments of error, he argues only the fourth assignment, which states:

"That the trial court erred in refusing to hold the appellant was entrapped and to therefore dismiss the respondent's action."

The city's evidence in chief consisted of the testimony of J. D. Porter, a sergeant in the Seattle police department. Porter had been in the department for eleven years and, at the time of the events hereinafter related, was working with the vice squad. On the evening of September 4, 1946, Porter went to the Seattle Hotel, for the purpose of ascertaining whether or not prostitution was being practiced there. Before he left for the hotel, he and Officer Sylvester recorded on a slip of paper or card, admitted in evidence as exhibit No. 1, the numbers of a ten-dollar bill and two five-dollar bills.

Porter registered at the hotel under his own name, but thought he might have given his address as Spokane or Portland. He was assigned to room No. 335. He went to his room, and about nine o'clock called for a bellboy. When the boy arrived, Porter asked him if he could get him a girl, to which the bellboy replied that he could not, but that, if he (Porter) would come back around eleven or eleven-thirty, there would be someone there who could.

Porter then left the hotel but returned to his room about eleven-thirty and again called for a bellboy. In answer to this call, appellant, Gleiser, appeared. Porter then asked Gleiser if he could get him a girl, and, after Gleiser had checked Porter's identification, he told Porter he could get him a girl, and that the price would be twenty dollars for twenty minutes and fifty dollars for an hour. Porter stated that he could only afford twenty dollars and gave Gleiser the marked money, one ten- and two five-dollar bills. Gleiser then told Porter they would have to go to another room where the girl was, and Gleiser took him to room No. 407. When they entered room No. 407 no one was there, and appellant knocked on the adjoining room No. 406. The girl, later identified as June Simms, came to room No. 407

from room No. 406, through the connecting door. Porter testified:

"Q. Did the defendant have any conversation with the girl? A. He told her he had already collected the twenty dollars for the trick. Q. Where did Gleiser go then? A. He left the room. Q. What occurred then? A. The girl then made some such remark—[Objection by Mr. Dailey was sustained.] Q. Without repeating any conversation, what did she do? A. She took off her dress which was the only garment she had on. Q. What did you do then? A. I placed her under arrest."

After the girl had dressed, Porter took her downstairs and placed her in charge of another officer. He then got Officer McKay and they went up to room No. 407. They knocked on the door, which was opened by a girl known to the department as Molly Blahn, alias Peggy Williams. Porter heard someone in room No. 406, and he stepped out into the hall and saw Gleiser coming out of room No. 405. He stopped Gleiser and arrested him.

"Q. Do you know whether rooms 405, 406 and 407 were adjoining rooms? A. Yes, at that time they were used as adjoining rooms."

Porter then took Gleiser into room No. 407, where the girl was, searched him, and found the two marked five-dollar bills in Gleiser's wallet. Gleiser was taken to the police station, where he was again searched, and the other ten dollars in marked money was found.

On cross-examination, Porter stated that he did not know any girl in the hotel; that he did not know the girl Molly Blahn, alias Peggy Williams, and had never seen her before the night in question, but he knew her police record; that he never at any time asked for liquor.

Appellant took the stand and testified in his own behalf. He stated that he had been married for about twelve years; that he had been employed at the Seattle Hotel approximately fourteen months, and worked from twelve to eight a. m. as combination bellman and elevator operator. A few minutes after he went on duty the night in question, he was called by the clerk and told to go to room No. 335. Gleiser

went to room No. 335, rapped on the door, and was invited in by Porter, who asked him if he could get him a bottle of whisky. Gleiser informed Porter they had no whisky, and, as he was leaving the room, Porter asked him if June Simms still lived there. Gleiser answered that he did not know, but that he would check at the desk, which he did, and was informed by the clerk that June Simms had room No. 407. Gleiser went back and told Porter what the clerk had said, and then went on about his business. About fifteen minutes later, he got a call from the fourth floor, and when he went up, Porter and "this so-called June" were waiting to go downstairs.

Appellant stated that he did not know June Simms prior to that time, nor that she lived in the hotel; that he had never seen her prior to that night and had never seen her since. He further stated he was not searched in the hotel; that he was searched at the police station, but that no money was found on him, other than his own; that he took no money from Porter, and no marked money was found on him; that he had no conversation with Porter relative to getting him a girl or how much it would cost him.

Appellant admitted having been convicted in police court of a similar offense in another case, but stated that the case had been appealed to the superior court.

Joseph H. Bingston, the bellboy who was on duty prior to Gleiser, was called by appellant, and stated that Porter called him and wanted some whisky; that he told Porter they had no whisky, but that he could get him some beer; that he went down and got Porter two bottles of beer; that Porter then asked him if he could get him a girl, and he told Porter that he could not, that they had no women there.

Appellant states in his brief: "The appellant takes the position that the case at bar is clearly one of entrapment." We understand it is appellant's contention that the evidence shows that Officer Porter solicited appellant to commit the crime of which he was convicted; that this idea originated with Officer Porter, and that the solicitation was for the purpose of inducing appellant to break the law so that the officer could arrest him.

The question of entrapment was raised and discussed in *Butts v. United States*, 273 Fed. 35, 18 A. L. R. 143. In the annotation to the case, authority is cited from practically every state and from the Federal courts. In many of the cases cited, it was held that the facts did not show that the inducements relied upon were sufficient to constitute entrapment, and in others that there were sufficient facts to entitle the defendant to an instruction on entrapment. Under a general statement in the annotation, to the effect that it is no defense that a person acting as a decoy furnished an opportunity for the commission of the offense, many cases are cited, and among them we find *State v. Littooy*, 52 Wash. 87, 100 Pac. 170.

The *Littooy* case seems to be the first one decided by this court in which the question of entrapment is discussed. Defendant Littooy was tried, convicted, and sentenced upon an information charging him with the crime of practicing dentistry without a license. The eleventh assignment of error was predicated upon the refusal of the court to give an instruction on entrapment. The opinion states:

"The court might properly have refused this instruction on the ground that there is no evidence in the record to support it. There is no evidence that any inducements were used other than that the witness went to the office of the appellant, had him fill a cavity in his tooth, and paid him for the service. *Opportunity and inducement are not equivalent terms*." (Italics ours.)

The cited case refers to and quotes at length from *Evanston v. Myers*, 172 Ill. 266, 50 N. E. 204, which reversed *Evanston v. Myers*, 70 Ill. App. 205. The opinion of the supreme court of Illinois (172 Ill. 266) refers to the decision of the appellate court as follows:

"The Appellate Court, in passing upon this case, found that the beer was sold as alleged in the complaint, but held that, inasmuch as the city furnished the money and the purchaser was in its employ to discover violators of the ordinance, the offense was one induced by the city of Evanston, and the defendant was not punishable therefor."

The opinion continues:

"Under the facts of the case, as we understand them, we

cannot concur in this view. The offense, if one was committed, consists in the unlawful selling of intoxicating liquor. The defendant was passing through an alley in Evanston with a load of beer when Denvir hailed him, asking, 'How is it for a case of beer?' to which he replied, 'It is all right.' The money was paid and the beer handed out. It is clear that Denvir, in making this purchase, used no fraud, deceit, or inducement other than a willingness to buy. . . . The offense of selling this beer having been voluntarily committed, is it reasonable to say that the willingness of Denvir to purchase, for whatever purpose or object, constitutes a sufficient inducement to appellee to make the sale, so as to excuse the act? We think not. The offense consisted, not in the buying, but in the selling of the beer. . . .

"In the case at bar it may be truly said it does not appear that it was the purpose of the city of Evanston to induce or solicit the unlawful selling of beer within its limits, but to ascertain whether the ordinance was being violated in that regard. The appellee committed the act charged against him, deliberately and voluntarily, and in such a manner as to indicate that he would have sold beer to any other person applying for it. We think no element is wanting on the part of appellee in this case to bring this act within the letter and spirit of the ordinance."

We think it can be said in the instant case that it was not the purpose of the city or its officers to induce appellant or anyone else to break the law; rather, it was the purpose of Porter, in going to the Seattle Hotel, to ascertain, if possible, whether or not the ordinance here in question was being violated. Porter, according to the city's evidence, used no means or inducements other than that he asked appellant if he could get him a girl, and appellant, after making some inquiry as to Porter's identity, told him he could get him a girl, and what it would cost him. Then followed the events hereinbefore set out.

As in the *Evanston* case, *supra,* it seems to us the city's evidence in the instant case shows that appellant committed the act charged against him, deliberately and in such a manner as to indicate that he would have assisted in procuring a girl for any guest of the hotel, after satisfying himself as to the identity of such person, and provided the person had the money to pay.

The *Evanston* case refers to and quotes from *Grimm v. United States,* 156 U. S. 604, 39 L. Ed. 550, 15 S. Ct. 470. The *Littooy* case, *supra,* also refers to and quotes from *People v. Liphardt,* 105 Mich. 80, 62 N. W. 1022.

The next case decided by this court, in which the question here under consideration was raised, is *State v. Ragan,* 157 Wash. 130, 288 Pac. 218. Ragan was informed against for the crime of bootlegging. On a trial before a jury, he was found guilty of the crime charged. He appealed from the judgment and sentence imposed. One of his contentions in this court was that he was entrapped into the commission of the offense of which he was convicted. The state's evidence, in so far as material, showed that one Hubbard, an undercover man in the Federal prohibition service, was employed as a deputy sheriff and sent to investigate the conduct of Ragan relative to his engaging in illicit traffic in intoxicating liquor. Hubbard went to appellant's home, and meeting appellant, represented to him that he (Hubbard) was a bootlegger engaged in the liquor trade at Aberdeen, and desired to obtain liquor from a source where he could avoid the profits of the middleman. By these and other representations, he disarmed the appellant of any suspicions he may have had, and entered into an agreement with him to purchase six cases of liquor at a stipulated price, to be delivered that evening at a place to be selected when Hubbard returned to the house for the liquor. A delivery of the liquor was not made that evening, but a further agreement was made between Hubbard and appellant, pursuant to which appellant was to deliver to Hubbard twenty-six cases of liquor at a garage in Blaine. Hubbard met appellant, and, as the latter was delivering the liquor, Hubbard arrested him. We quote from the opinion:

"It is next contended that the appellant was entrapped into the commission of the offense of which he was convicted. It may be that, were his own testimony to be believed, there would be some foundation for the contention. But it is not to entrap a person into the commission of a crime, merely to furnish him with an opportunity to commit the crime. *State v. Littooy,* 52 Wash. 87, 100 Pac. 170, 17 Ann. Cas. 299. The evidence on the part of the state shows

that the police officers did no more than this, and it was for the jury to say which of the contradictory statements was to be believed."

Surely, if the facts as related in the above-cited case show nothing more than "an opportunity to commit the crime," the facts in the instant case, as established by the city's evidence, show nothing more than that appellant was furnished with an opportunity to commit the crime charged.

The next case decided by this court to which we shall refer is *State v. Cowling*, 161 Wash. 519, 297 Pac. 172. In the cited case, both William Cowling and his wife Maud were charged with unlawfully opening up, conducting, and maintaining a place for the unlawful sale of intoxicating liquor. Both defendants were convicted, but only William Cowling appealed to this court. The evidence is not set out in the opinion, other than as hereinafter appears. The opinion states:

"Although there was a sharp conflict in the evidence as between that of the state, resting chiefly upon the testimony of Federal agents, and that of appellant, his wife, and character witnesses in their behalf, the evidence for the state was sufficient, having been accepted by the jury, to justify the convictions."

The opinion continues:

"The last error alleged is in denying a requested instruction on entrapment. It is argued that, since the evidence disclosed that one of the Federal agents had pretended to be a friend of a certain young University student, and inveigled himself into the confidence and friendship of appellant and his wife, by reason of which they became friends, and was welcome to their home at any time, the element of entrapment existed in this case.

"*We have established the principle in this state that it is not entrapment merely to furnish a person with an opportunity to commit the crime charged. State v. Littooy,* 52 Wash. 87, 100 Pac. 170, 17 Ann. Cas. 292; *State v. Ragan,* 157 Wash. 130, 288 Pac. 218." (Italics ours.)

A reading of the cases hereinbefore referred to will reveal that no attempt was made to announce any rule relative to just what the inducements must consist of, in order

to constitute entrapment, the court holding, however, in each case that the facts showed nothing more than that an opportunity was furnished the defendant to commit the offense, and that "it is not to entrap a person into the commission of a crime, merely to furnish him with an opportunity to commit the crime."

Appellant, in the instant case, cites *State v. Berry*, 200 Wash. 495, 93 P. (2d) 782, wherein the case of *Sorrells v. United States*, 287 U. S. 435, 77 L. Ed. 413, 53 S. Ct. 210, 86 A. L. R. 249, is referred to, stating in his brief:

"An examination of these cases cited indicates that a conviction is not warranted where officers of the law furnished the defendant with an opportunity to commit the crime charged."

The opinion in the *Berry* case makes no reference to any of the cases decided by this court hereinbefore discussed.

It is true that, in the *Sorrells* case, *supra,* the court held that the defense of entrapment should have been submitted to the jury, and because of the refusal of the trial court so to do, the judgment was reversed, and the cause remanded for further proceedings. However, it is apparent from the following statement found in the opinion that the *Sorrells* case announced no rule contrary to that announced by the court in the cases hereinbefore cited. We quote:

"It is well settled that the fact that officers or employees of the Government merely afford opportunities or facilities for the commission of the offense does not defeat the prosecution. Artifice and stratagem may be employed to catch those engaged in criminal enterprises."

Then follows a list of cases, among them *Grimm v. United States, supra,* referred to in *State v. Littooy, supra.*

In the *Berry* case, *supra,* Berry offered to prove certain facts which he contended were sufficient to support his defense of entrapment. The trial court refused the offer, and we stated that

" . . . even if Berry had testified in harmony with his offer of proof, and if we concede the truth of the statements, the alleged facts do not bring Berry within the entrapment rule."

The *Berry* case does quote the following statement found in 15 Am. Jur. 25, § 336:

" 'As a general rule, if the criminal intent originates in the mind of the entrapping person and the accused is lured into the commission of the offense charged in order to prosecute him therefor, no conviction may be had, though the criminality of the act is not affected by any question of consent. In some jurisdictions, however, initiative on the part of the perpetrator of an act is not essential to charge him with criminal responsibility. A person who commits a crime at the suggestion or instigation of another is just as guilty as if the design had originated with him, and it is not material in this respect that the suggestion was made by a police officer.' "

We are of the opinion that it was not the intention of this court in the *Berry* case to announce, nor did it announce, any rule relative to entrapment contrary to the rule stated in *State v. Littooy, State v. Ragan,* and *State v. Cowling, supra,* or which would require this court to hold that the evidence of the city shows that sufficient inducements were made to appellant to commit the offense with which he was charged, to constitute entrapment.

 Regardless of what the rule may be in other jurisdictions, we are of the opinion that, based upon the decisions hereinbefore referred to and the facts upon which such decisions rest, the facts in the instant case show nothing more than that appellant was furnished an opportunity to commit the offense of which he was convicted, and, under the rule announced and followed by this court, "it is not to entrap a person into the commission of a crime, merely to furnish him with an opportunity to commit the crime."

 We find sufficient evidence in the record to support the verdict, and the judgment of the trial court is affirmed.

MALLERY, C. J., BEALS, MILLARD, and STEINERT, JJ., concur.