[No. 15447–8–I.   Division One.   October 6, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. JESUS AUITIA ENRIQUEZ, *Appellant.*

*Anna Mari Sarkanen* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Reba Weiss, Deputy,* for respondent.

SCHOLFIELD, C.J.—Jesus Auitia Enriquez appeals from his conviction for the sale of a controlled substance, assigning error to the trial court's refusal to compel disclosure of the identity of a confidential informant or hold an in camera hearing concerning the disclosure issue. We affirm.

## FACTS

Enriquez was charged on May 31, 1984, with the unlawful delivery of cocaine to an undercover police officer. Prior to trial, he moved to compel disclosure of the identity of the informant who had helped to arrange the sale. A hearing on the motion was held before the criminal motions judge.

At that hearing, undercover Detective Duane Lewis testified that he was told by an informant, known as Juan, that Enriquez was dealing cocaine out of an apartment house. Lewis testified that he instructed the informant to get to know Enriquez, and if he was dealing they would set up a controlled buy.

Over the next 2½ to 3 weeks, Juan met with Enriquez about six times. Enriquez testified that Juan suggested to him several times that Enriquez could better support his cocaine addiction if Enriquez sold cocaine and that he knew someone who wanted to buy. Eventually, Enriquez agreed to meet on April 27, 1984, with a potential buyer named Steve, who was actually Detective Lewis. Enriquez testified that Juan coached him on what to say to "Steve", what to sell him, and what price to ask. Detective Lewis told the court that, when he first met Enriquez, it was apparent that

he and the informant had discussed the drug deal but had made no plans nor were they in the process of making plans to go through with the sale.

Negotiations for the sale of cocaine and heroin were begun, and Enriquez indicated that the people he worked for wanted to move slowly on the deal. Over the next 4 weeks, there were several meetings to negotiate the price and the quantity of the sale. Juan was present at some but not all of these meetings. One such meeting, which Juan did not attend, was called for by Enriquez on May 9. Lewis testified that Enriquez was concerned that his arrest a week earlier for carrying a concealed weapon and possession of cocaine would sour their deal, and wanted to assure Lewis that "[h]e was trying his best to make the deal happen."

At about 5 p.m. on May 25, 1984, Lewis met with Enriquez at a local diner to make the narcotics sale. Juan was not present. After three attempts to contact his "supplier", Enriquez finally told Lewis that the cocaine would be delivered about 8 p.m. At around 8 p.m., Enriquez left the diner, returning a short time later with the narcotics. He and Lewis went to Enriquez' car, the deal was consummated and Enriquez was arrested.

Enriquez brought a pretrial motion to compel the State to disclose Juan's true identity, arguing that the informant's testimony was necessary to his defense of entrapment. The court denied the motion and also denied Enriquez' request for an in camera hearing on the matter. The case proceeded to trial. The defense of entrapment was raised, and an instruction on the issue was given to the jury. Nevertheless, Enriquez was found guilty as charged.

Enriquez appeals, asking that his case be remanded for an in camera hearing pursuant to CrR 4.7(h)(6) to determine whether the disclosure of the informant's identity is required.

## INFORMER'S PRIVILEGE

Enriquez contends that the evidence clearly established that the testimony of the informant would have been rele-

vant to his entrapment defense. He argues that either the court should have ordered the disclosure of the informant's identity or at least held an in camera hearing. We disagree.

What is commonly referred to as the "informer's privilege" is actually the government's privilege to withhold the identity of police informants. The privilege is recognized in Washington both by statute and court rule. RCW 5.60-.060(5); CrR 4.7(f)(2). Its purpose is to preserve the public interest in law enforcement by encouraging citizens to communicate their knowledge of the commission of crime to the police, while preserving their anonymity. *Roviaro v. United States,* 353 U.S. 53, 59, 1 L. Ed. 2d 639, 77 S. Ct. 623 (1957). The privilege is not absolute, however, and where disclosure of the informant's identity "is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Roviaro,* at 60–61.

There is no fixed rule to determine whether disclosure is justifiable. The court must balance the public interest in protecting the flow of information against the individual's right to prepare his defense. *Roviaro,* at 62. The proper balance depends upon the particular circumstances of each case, "taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Roviaro,* at 62.

The failure of the court to order disclosure where required under the standards set out in *Roviaro* violates notions of fundamental fairness and is prejudicial error. *Roviaro,* at 60, 65. Thus, if as a matter of fundamental fairness the defendant is entitled to the information, it does not matter whether the testimony of the informer would support the accused or not; if the trial court refuses to compel disclosure, the defendant's remedy is a new trial. *State v. Harris,* 91 Wn.2d 145, 149, 588 P.2d 720 (1978). The preferred method for determining whether to disclose without prejudicing the rights of either the State or the defendant, is for the court to hold an in camera session at which the judge hears the informer's testimony and applies

the *Roviaro* standard. *State v. Harris, supra* at 150; CrR 4.7(h)(6).[1]

However, an in camera hearing is *only* necessary where "'the defendant makes an initial showing that the confidential informant may have evidence that would be relevant to the defendant's innocence.'" *State v. Allen*, 27 Wn. App. 41, 48, 615 P.2d 526 (quoting *State v. Potter*, 25 Wn. App. 624, 628, 611 P.2d 1282 (1980)), *review denied*, 94 Wn.2d 1025 (1980). The defendant then carries the burden of showing a justification for an exception to the rule of nondisclosure. *State v. Massey*, 68 Wn.2d 88, 92, 411 P.2d 422, *cert. denied*, 385 U.S. 904 (1966). Thus, even when the informer is a material witness, it may be that disclosure will not be required unless knowledge of the informer's identity would be "relevant and helpful" to the defendant under the circumstances and in light of the considerations outlined in *Roviaro. State v. Harris, supra* at 150-51.

■■ In the instant case, Enriquez argues that the testimony of the informant would have been relevant and helpful to his entrapment defense since the informant was a material witness to, and a primary actor in, the entrapment.

The defense of entrapment is defined by RCW 9A.16.070, which provides that:

(1) In any prosecution for a crime, it is a defense that:
(a) The criminal design originated in the mind of law enforcement officials, or any person acting under their direction, and
(b) The actor was lured or induced to commit a crime which the actor had not otherwise intended to commit.
(2) The defense of entrapment is not established by a

---

[1] CrR 4.7(h)(6) provides:
"Upon request of any person, the court may permit any showing of cause for denial or regulation of disclosure, or portion of such showing, to be made in camera. A record shall be made of such proceedings. If the court enters an order granting relief following a showing in camera, the entire record of such showing shall be sealed and preserved in the records of the court, to be made available to the appellate court in the event of an appeal."

showing only that law enforcement officials merely afforded the actor an opportunity to commit a crime.

The entrapment defense focuses upon the intent or "predisposition" of the defendant to commit the crime. *State v. Smith*, 101 Wn.2d 36, 42, 677 P.2d 100 (1984). The relevant question is whether a trier of fact could reasonably conclude from the evidence that the defendant had no intent to sell drugs until that intent was implanted in his mind, and that he was induced to deliver the drugs through fundamentally unfair efforts by law enforcement officers. *State v. Walker*, 11 Wn. App. 84, 89, 521 P.2d 215 (1974). Merely affording the defendant an opportunity to commit a crime, therefore, is not entrapment. *Seattle v. Gleiser*, 29 Wn.2d 869, 878, 189 P.2d 967 (1948).

When affording a suspect that opportunity, the police may use deception, trickery or artifice, *State v. Swain*, 10 Wn. App. 885, 889, 520 P.2d 950 (1974), and may employ a normal amount of persuasion to overcome expected resistance on the part of the defendant to sell narcotics. *State v. Smith, supra* at 42–43; *State v. Waggoner*, 80 Wn.2d 7, 11, 490 P.2d 1308 (1971). Therefore, the defendant must show more than mere reluctance on his part to violate the law. *State v. Walker, supra* at 88.

In *State v. Smith, supra*, the defendant sought to compel the appearance of an informant as a material witness. The defendant claimed that the confidential informant had repeatedly asked to purchase marijuana to ease her dying husband's pain, thereby entrapping him. The court held that the facts alleged by the defendant, "even if corroborated entirely by the informant, [were] inadequate as a matter of law to support the entrapment defense", and since the informant's testimony was only material to that defense, her presence at trial was not necessary. *Smith*, at 42.

Similarly, where no plausible defense of entrapment was shown, the trial court was not required to hold an in camera hearing in *State v. Helfrich*, 33 Wn. App. 338, 343–45, 656 P.2d 506 (1982). In *Helfrich*, the defendant was only

able to establish that someone named "Buzz" contacted him and asked him to bring narcotics to the tavern where he was later arrested. There was no evidence that Buzz was the confidential informant or, even if he was, that he did more than help provide the defendant with an opportunity to commit the crime. *Helfrich,* at 344–45.

Likewise, the record in the case at bar supports the conclusion that, even if the confidential informant would have completely corroborated Enriquez' testimony, Enriquez nevertheless failed as a matter of law to make out a defense of entrapment. At most, the informant presented Enriquez with an opportunity to commit the crime, by providing a ready buyer and by coaching him on how to market his product. The amount of persuasion used by the informant was not improper. He merely pointed out to Enriquez that he could better support his cocaine addiction by selling narcotics. The informant repeatedly made that suggestion before Enriquez agreed, but Enriquez was not badgered or pressured in any way.[2]

Moreover, Enriquez demonstrated his predisposition to commit the crime by his conduct throughout the negotiations and the sale. For example, he went out of his way to reassure the undercover officer that he wanted to proceed with the deal despite his arrest on an unrelated charge. In order to consummate the deal, Enriquez spent 3 hours making connections with his supplier at the time of the sale.

In summary, having failed to establish a plausible defense of entrapment, Enriquez could not show that the informant may have evidence "relevant and helpful" to his defense. *See State v. Allen, supra.* Absent such a showing, the court properly denied his request for an in camera

---

[2]*Cf. State v. Keller,* 30 Wn. App. 644, 637 P.2d 985 (1981), where the defendant testified that an undercover officer and an informant pleaded with him for an hour to sell them marijuana. The defendant stated that he only wanted them to leave him alone, so he offered to give them the marijuana he had on hand for his personal use. They nevertheless insisted on paying for it. The court reversed the trial court's refusal to instruct the jury on entrapment.

hearing. The fact that subsequently the trial judge decided to give an instruction on entrapment does not bear upon the correctness of the ruling made by the criminal motions judge. No showing is made that the reasons relied upon by the trial judge for so instructing in any way reflected on the accuracy of the ruling of the motions judge.

Accordingly, Enriquez' request that we remand this case for a CrR 4.7(h)(6) hearing is denied, and the judgment is affirmed.

WILLIAMS, J., concurs.

RINGOLD, J. (dissenting)—I respectfully dissent and would reverse. The precise issue presented here, as in most entrapment cases, is whether the defendant had a "predisposition" to commit the crime. *State v. Smith,* 101 Wn.2d 36, 42, 677 P.2d 100 (1984). This is a factual determination which normally falls within the province of the jury. *State v. Pleasant,* 38 Wn. App. 78, 80, 684 P.2d 761, *review denied,* 103 Wn.2d 1006 (1984).

Enriquez argues that the informant's testimony would be helpful to establish his defense of entrapment to the jury, because it would corroborate his testimony as to what occurred. The privilege asserted by the State against revealing an informant's identity must give way if "disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause . . ." *Roviaro v. United States,* 353 U.S. 53, 60–61, 1 L. Ed. 2d 639, 77 S. Ct. 623 (1957).

The preferred method of determining whether an informant's information would be helpful is to hold an in camera hearing where the judge hears the informant's testimony. *State v. Smith, supra* at 44. It is not necessary to hold a hearing unless the "defendant makes an initial showing that the confidential informant may have evidence that would be relevant to the defendant's innocence." *State v. Allen,* 27 Wn. App. 41, 48, 615 P.2d 526 (citing *State v.*

*Potter,* 25 Wn. App. 624, 628, 611 P.2d 1282 (1980)), *review denied,* 94 Wn.2d 1025 (1980). Doubt, however, should be resolved in favor of holding the in camera hearing. *State v. Cleppe,* 96 Wn.2d 373, 382, 635 P.2d 435 (1981), *cert. denied,* 456 U.S. 1006, 73 L. Ed. 2d 1300, 102 S. Ct. 2296 (1982).

When the criminal motions judge refused to grant the in camera hearing, he stated:

> I was very careful at the time that Mr. Enriquez was testifying to make sure of what he said, and even taking his statement on the stand at its best, there is nothing that would . . . say that the confidential informant entrapped him. The confidential informant . . . made the opportunity available, and as I read the cases that is not entrapment . . .
>
> I don't see any need for [an in camera hearing]. . . . If the showing were such that would indicate that there may have been entrapment, then I think that would be appropriate, but I don't think that the showing that is before this court is sufficient to clarify that question. . . .

It is apparent from reading the record on the motion requesting the in camera hearing that the pretrial judge was making the factual inference that Enriquez was predisposed to commit the offense. The proper test should have been whether any rational trier of the fact at the time of trial would, from the evidence, find or be able to find a reasonable doubt as to whether the defendant had the "predisposition" or "intent" to commit the crime.

Some cases have held that where the defendant failed to make a prima facie case of entrapment as a matter of law, the denial of an in camera hearing is not error. *State v. Smith, supra; State v. Helfrich,* 33 Wn. App. 338, 656 P.2d 506 (1982). This is what the majority concludes happened here. I disagree.

Enriquez testified that he had never before sold cocaine. At the pretrial hearing the State elicited the following testimony from Enriquez:

Q: After awhile you decided you are going to support your habit better and sell some cocaine?

A: Yes, because he [the informant] kept telling me about it.

Q: He kept telling you about it and you agreed at the end; is that correct?

A: Yes.

The informant also coached Enriquez concerning what to say to the undercover police officer and what to sell him.

The majority correctly states that the State's informant may use a normal amount of persuasion to overcome an expected resistance to sell drugs. *State v. Smith, supra* at 42–43. It is not necessary, however, to prove outrageous conduct when asserting the statutory defense of entrapment. *State v. Keller,* 30 Wn. App. 644, 647, 637 P.2d 985 (1981).

Three weeks elapsed before the informant indicated that Enriquez was willing to consider selling drugs.[3] This suggests to me that Enriquez' claim is credible. Certainly a jury could infer that Enriquez did not have a prior disposition to sell drugs.

The determination of "predisposition" or "intent" is always a matter which must be inferred from all of the evidence. In my view the person who instigated the transaction, the informant, would in all likelihood be in the best position to cast light on the defendant's intent at the time that he was contacted by the informant.

The majority at page 587 states: "The fact that subsequently the trial judge decided to give an instruction on entrapment does not bear upon the correctness of the ruling made by the criminal motions judge." The evidence adduced at the hearing for disclosure of the informant was essentially the same as at trial, *i.e.,* the defendant's own

---

[3]In *State v. Smith,* 101 Wn.2d 36, 40, 677 P.2d 100 (1984), the informant asked the defendant several times to sell him marijuana before the defendant agreed. It is not clear from the opinion, however, if the length of time it took to wear down the defendant was as long as the present case. Here there are enough facts, if believed, for the jury to infer that the defendant had no predisposition to sell drugs. *See State v. Keller,* 30 Wn. App. 644, 637 P.2d 985 (1981).

testimony. While not decisive, it is persuasive that the trial court ruled that there was sufficient evidence of the elements of entrapment to give an instruction to the jury. In ruling upon a motion to disclose an informant's identity, it is essential for a trial judge to consider whether there would be alternative inferences which could be drawn from the defendant's testimony. The court must pose the question: "If the informant testified, would there be sufficient evidence to raise a doubt in the minds of the jury as to the defendant's intent or predisposition at the time of the contact with the informant?" The issue before the criminal motions judge, therefore, is whether from the evidence presented a trier of fact could find that the elements of entrapment were indicated, rather than only the opportunity for the crime made available.

Under the circumstances here, the criminal motions judge was required to convene an in camera hearing to determine whether there could be more than one inference which could be raised at the time of trial with respect to the defense of entrapment. I would reverse and order an in camera hearing.

Review denied by Supreme Court January 6, 1987.