[No. 29643-4-I.   Division One.   October 31, 1994.]

THE STATE OF WASHINGTON, *Respondent,* v. EDWARD ANTHONY TRUJILLO, ET AL, *Defendants,* TERRANCE BLAINE CHRISOSTOMO, *Appellant.*

*Neal J. Philip* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Gregory Eugene Jackson, Deputy,* for respondent.

GROSSE, J. — Terrance B. Chrisostomo appeals his conviction of one count of delivery of cocaine. He claims the trial court erred by refusing to instruct the jury on the defense of entrapment. We affirm.

## FACTS

In January 1991, the management of the Ball-Incon Glass Packaging Company (Ball-Incon) asked the Seattle Police Department to investigate suspected drug transactions tak-

ing place on company property and involving company personnel. Detective Michael D. Keefe of the narcotics unit contacted Don Skinner, a paid informant with whom he had previously worked, and arranged for Skinner to become a Ball-Incon employee. In February 1991, Skinner began working at Ball-Incon under the name of Don Jensen and was assigned to Chrisostomo's crew.

Chrisostomo testified that one day at work, Skinner asked him whether he knew where Skinner and his friend could get an eight-ball. Chrisostomo asked, "eight-ball?", and Skinner said he meant an eight-ball of cocaine. Chrisostomo replied that he "didn't know the first thing about it".

Skinner asked Chrisostomo whether he knew anyone who did know something about it. Chrisostomo replied, "not for sure", but "maybe somebody I know might know, but I couldn't tell you exactly." When Skinner asked if Chrisostomo would check, he told Skinner he "couldn't guarantee anything".

The two men continued to talk. Chrisostomo commented about the recent nice weather and remarked that there had to be a better way to make a living. He testified that, by this comment, he meant nothing more than to imply that there had to be something better than the rotating shift schedule used at Ball-Incon, which interfered with sleeping and social plans. Skinner interpreted Chrisostomo's comment to mean dealing drugs: "We were standing at the Coke machine and coffee machine, and he says, I think there's got to be a better way to make a living. And I said, there is, but it's illegal." According to Skinner, Chrisostomo replied, "We'll have to talk." Skinner interpreted this as suggesting a drug transaction.

Skinner asked Chrisostomo about getting cocaine on at least three occasions over the next 3 or 4 days. Each time, Chrisostomo told him he had no information. On one occasion, Skinner asked Chrisostomo what he thought the price of an eight-ball would be. Chrisostomo said he did not know for certain, but estimated $150. Eventually, Chrisostomo informed Skinner an eight-ball cost $250.

On March 7, 1991, Chrisostomo and a co-worker drove into a fast food restaurant's parking lot and saw Skinner and another man sitting in a car parked nearby.[1] Skinner approached Chrisostomo and asked him if he had obtained the cocaine.[2] When Chrisostomo said he was unable to get any cocaine, Skinner pressed him for an explanation. Chrisostomo lied and said the person with whom he spoke had no cocaine. In fact, Chrisostomo had not talked to anyone. Skinner suggested that he and Chrisostomo meet later that night at a nearby tavern. He gave Chrisostomo his pager number with directions to call him when he had information. Skinner asked for Chrisostomo's telephone number. In response, Chrisostomo gave him a number he knew had been disconnected so Skinner would be unable to contact him by telephone.

When Chrisostomo arrived home, he called a friend, thinking he might know where to get cocaine. Approximately $1^1/_2$ hours later, the friend called and said he was able to obtain some cocaine. Chrisostomo asked the friend to meet him at the tavern where Skinner was waiting. Chrisostomo then called the tavern and arranged to meet Skinner that evening. He testified that he did not call Skinner's pager number so Skinner would be unable to obtain the telephone number from which he was calling.

At the tavern, Chrisostomo obtained the cocaine from his friend and delivered it to Detective Keefe in exchange for $250. According to Chrisostomo, he delivered the cocaine solely in an attempt to get Skinner to stop pestering him. Chrisostomo testified: "I figured the only way I could get this guy to leave me alone was to get him what he wanted, and that was basically what I — against my better judgment, that's what I did."

Chrisostomo was charged with one count of delivery of cocaine. The State objected to the instruction on the defense of entrapment. The court removed the instruction over defense

---

[1]The other man in Skinner's automobile was Detective Keefe.

[2]The inference from Chrisostomo's testimony was that the meeting in the parking lot was unplanned and coincidental. Skinner testified that he and Chrisostomo planned the meeting.

counsel's objection. The jury found Chrisostomo guilty as charged. He was sentenced to 21 months' imprisonment, the bottom of the standard range.

DISCUSSION

The defense of entrapment is statutorily defined as:

(1) In any prosecution for a crime, it is a defense that:
(a) The criminal design originated in the mind of law enforcement officials, or any person acting under their direction, and
(b) The actor was lured or induced to commit a crime which the actor had not otherwise intended to commit.
(2) The defense of entrapment is not established by a showing only that law enforcement officials merely afforded the actor an opportunity to commit a crime.

RCW 9A.16.070.

■ Generally, an instruction can be given to the jury if evidence exists to support the theory upon which the instruction is based. *State v. Davis*, 119 Wn.2d 657, 665, 835 P.2d 1039 (1992). With respect to the quantum of proof necessary to entitle a defendant to an entrapment instruction, we hold that a defendant must present evidence which would be sufficient to permit a reasonable juror to conclude that the defendant has established the defense of entrapment by a preponderance of the evidence. We recognize that in *State v. Galisia*, 63 Wn. App. 833, 836, 822 P.2d 303, *review denied*, 119 Wn.2d 1003 (1992), the court held that a defendant need only produce "some evidence" to support an entrapment instruction.[3] We conclude that, in light of *State v. Riker*, 123 Wn.2d 351, 869 P.2d 43 (1994) and our discussion of the defendant's burden of proof on the entrapment defense in *State v. Chapin*, 75 Wn. App. 460, 471-72, 879 P.2d 300 (1994), this statement of the required quantum of proof is overly broad and improperly entitles a defendant to an entrapment instruction upon production of a mere scintilla of evidence. A scintilla of evidence is not sufficient to justify an entrapment instruction. *State v. Gray*, 69 Wn.2d 432, 435, 418 P.2d 725 (1966).

Accordingly, in the instant case, Chrisostomo was not entitled to an instruction on the defense of entrapment unless he

---

[3]The court in *State v. Stegall*, 69 Wn. App. 750, 765, 850 P.2d 571, *review granted*, 122 Wn.2d 1016 (1993) followed *Galisia*.

produced sufficient evidence to persuade a reasonable jury that he has established the defense by a preponderance of the evidence.

■ ■ A police informant's use of the normal amount of persuasion to overcome the defendant's expected resistance to sell drugs is not entrapment; nor is the use of deception, trickery, or artifice by the police. *State v. Smith*, 101 Wn.2d 36, 42-43, 677 P.2d 100 (1984); *State v. Vinson*, 74 Wn. App. 32, 37, 871 P.2d 1120 (1994); *State v. Enriquez*, 45 Wn. App. 580, 585, 725 P.2d 1384 (1986), *review denied*, 107 Wn.2d 1020 (1987). In order to show entrapment, a defendant must show more than mere reluctance on his or her part to violate the law. *State v. Enriquez*, 45 Wn. App. at 585. Accepting Chrisostomo's version of the facts as true, we nevertheless find that he failed to produce sufficient evidence to meet his burden of proof.

In *Enriquez*, an informant met with the defendant six times during a span of $2^{1}/2$ to 3 weeks. The informant told the defendant he knew someone who wanted to buy cocaine and suggested on numerous occasions that the defendant could better support his cocaine habit by selling drugs. Eventually, the defendant agreed to meet with the buyer who was an undercover officer. On appeal, the court affirmed the trial court's conclusion that the defendant had failed to establish a plausible defense of entrapment, stating:

> The amount of persuasion used by the informant was not improper. He merely pointed out to Enriquez that he could better support his cocaine addiction by selling narcotics. The informant repeatedly made that suggestion before Enriquez agreed, but Enriquez was not badgered or pressured in any way.

(Footnote omitted.) *State v. Enriquez*, 45 Wn. App. at 586.

Unlike the informant in *Enriquez*, Skinner did not appeal to any weakness of Chrisostomo such as a drug addiction,[4] or to his sympathies.[5] Rather, the record shows that Skinner simply asked Chrisostomo on three occasions whether he

---

[4]The record contains no evidence that Chrisostomo was addicted to drugs.

[5]Appeals to sympathy alone are not sufficient to establish entrapment. *State v. Smith*, 101 Wn.2d at 43.

knew where he and his friend could get an eight-ball of cocaine. In *Enriquez*, the court concluded that the informant's behavior did not constitute badgering or pressuring. Skinner's behavior in the instant case involved a lesser degree of persuasion than the informant's in *Enriquez*. We find that the amount of persuasion Skinner used was not improper.

Unlike in *State v. Smith, supra*, the record shows that Chrisostomo never refused to obtain cocaine for Skinner.[6] Rather, he kept telling Skinner he was unable to obtain any drugs, until he finally delivered the cocaine at the tavern. At most, Chrisostomo showed a reluctance to commit the crime, which is insufficient to establish entrapment. *State v. Enriquez*, 45 Wn. App. at 585.

Further, in *Enriquez*, the court found that the 3 hours the defendant spent making connections with his supplier evidenced his predisposition to commit the crime. The record in the instant case shows that Chrisostomo also spent several hours arranging to obtain cocaine from his friend and investigating the price of an eight-ball, thus evidencing his predisposition.

In sum, we find that Chrisostomo did not present sufficient evidence to persuade a reasonable jury that he had established the defense by a preponderance of the evidence. By his actions, Skinner merely provided Chrisostomo with the opportunity to commit the crime of delivery of cocaine. This is not entrapment. RCW 9A.16.070(2); *Seattle v. Gleiser*, 29 Wn.2d 869, 878, 189 P.2d 967 (1948). The trial court did not err by refusing to instruct the jury on the defense of entrapment.

Affirmed.

KENNEDY and AGID, JJ., concur.

Reconsideration denied November 10, 1994.

Review denied at 126 Wn.2d 1008 (1995).

---

[6]Although not stated with specificity, it appears that the defendant in *Enriquez* also initially refused to take part in the drug transaction. The informant suggested "several times" that the defendant could better support his cocaine habit by selling cocaine and "[e]ventually" the defendant agreed to meet with a potential buyer. *State v. Enriquez*, 45 Wn. App. at 581.