

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

STATE OF WASHINGTON,                    )
                                        )         No.  35298-6-III
            Respondent,                 )
                                        )
    v.                                  )
                                        )
PATRICK JOSEPH LENNARTZ,                )         UNPUBLISHED OPINION
                                        )
            Appellant.                  )

SIDDOWAY, J. — Patrick Lennartz was convicted of first degree malicious mischief and custodial assault, arising out of separate acts of criminally disruptive behavior while being held in the Kittitas County Jail.  His opening brief raises challenges to only the malicious mischief conviction.

While the evidence was sufficient to support that conviction, a material misstatement of law by the prosecutor in closing argument, to which defense counsel did not object, requires reversal and retrial of that charge.  We reject Mr. Lennartz's argument in a pro se statement of additional grounds that insufficient evidence supports his conviction for custodial assault.  We affirm the custodial assault conviction, reverse the malicious mischief conviction, and remand for further proceedings.

FACTS AND PROCEDURAL BACKGROUND

In late December 2016, Patrick Lennartz was in the Kittitas County Jail awaiting trial on a misdemeanor. At lunchtime on December 23, Corporal Fernando Contreras served lunch to jail inmates with the assistance of an inmate worker. Lunch was served by passing a tray to an inmate through a "cuff port," which is a portal midway up the door, about a foot wide and six to eight inches high, that opens from the outside. For security reasons, jail staff make sure that inmates are away from the door before opening the cuff port.

When Corporal Contreras reached Mr. Lennartz's cell, he could see Mr. Lennartz sitting on his bunk, so he opened the cuff port. He made eye contact with Mr. Lennartz and told him it was lunchtime. When Mr. Lennartz did not respond, the corporal repeated that he was delivering lunch but Mr. Lennartz remained seated. At that point, the corporal handed the tray to the inmate worker, who remained at Mr. Lennartz's door, ready to hand him his tray. The corporal moved on. When Mr. Lennartz had still not accepted the lunch tray from the inmate worker, the corporal returned to Mr. Lennartz's cell, took the tray back, and directed the inmate worker to move on and finish serving.

At that point, Mr. Lennartz began to get upset. Corporal Contreras would later testify that Mr. Lennartz apparently believed the corporal had substituted a different lunch tray. Mr. Lennartz first began swearing and then began pounding on the wall of his cell and a window on the exterior wall of his cell. The window was tempered glass,

2

between one and a half to two inches thick.  The corporal demanded that Mr. Lennartz

stop and asked if he was refusing lunch.  When Mr. Lennartz continued to ignore him, the

corporal took it as a refusal, closed the cuff port, secured the door to the unit where Mr.

Lennartz was housed, and crossed the hall to another unit.

Corporal Contreras could still hear pounding on the wall and window, so before

long he secured the second unit and went back to the first to check on Mr. Lennartz.  Just

as he re-entered the first unit, he heard a loud crash and then saw that the external

window in Mr. Lennartz's cell was broken.  He radioed for backup.  Mr. Lennartz

initially stood by the window, picking up the glass and placing it on the sill or the bunk.

But he calmed down, complying when Corporal Contreras told him to stop handling the

glass and sit on his bunk.  While being transported to a "time-out cell," Mr. Lennartz told

Corporal Contreras that he had put a sandal on the base of his hand and was hitting the

window with the sandal when it broke.  He told Corporal Contreras that "he didn't mean

to break i[t]."  Report of Proceedings (RP) at 176.[1]

Several weeks later, the State charged Patrick Lennartz with first degree malicious

mischief for the incident.

---

[1] Before trial, Mr. Lennartz's competency was evaluated.  While he was found competent to stand trial, he was diagnosed with Intermittent Explosive Disorder, Schizophrenia by History, and Antisocial Personality Disorder.  No evidence of this diagnosis was presented to the jury.

A few days after he was charged with malicious mischief, Mr. Lennartz became agitated again, having learned that the court had imposed conditions to his release from custody at a time when he expected to be released. He asked to speak with an officer and Corporal Jody Casey responded. Corporal Casey opened the cuff door to Mr. Lennartz's cell so that he could look at the court paperwork that was causing Mr. Lennartz's consternation. When the corporal explained that the papers identified conditions to be met before he could be released, Mr. Lennartz became increasingly upset. He refused to comply with the corporal's direction to move away from the cuff door so that the corporal could safely close it. Before the cuff door could be closed, Mr. Lennartz threw liquid through the door that hit Corporal Casey on the face and chest. From the smell and taste, the corporal was convinced that Mr. Lennartz had used a cup to throw urine on him. The State filed an amended information charging Mr. Lennartz with custodial assault.

At trial, the State presented evidence of both incidents and of the disruption that the broken cell window created for the jail facility. Among other evidence of the disruption, Corporal Contreras testified that when a window is broken, it requires all jail staff to respond and requires shutting down operations throughout the facility. The State presented evidence that Mr. Lennartz's cell was shut down for 10 days.

Mr. Lennartz testified briefly in his own defense. He denied throwing urine on Corporal Casey. He testified that after he broke the window in his cell, he was not

No. 35298-6-III
*State v. Lennartz*

allowed to have a cup or "sharps." RP at 180.[2]  According to Mr. Lennartz, what he

threw out of his cell that might have splashed liquid on Corporal Casey was a towel that

he wet in his toilet to wipe rust off the window of his cell door.

In closing arguments, defense counsel talked to jurors about the jury instructions,

focusing on the requirement that the State prove each element beyond a reasonable doubt.

Discussing the malicious mischief charge, he told jurors he was "particularly struck" by

requirement of proof of "the evil intent, wish, design to vex." RP at 212.  His reference

was to the jury's instructions (1) that to prove first degree malicious mischief, the State

had to prove a "knowing[ ] and malicious[ ]" causing of an interruption or impairment of

service rendered to the public, and (2) defining "malice" and "maliciously" as meaning

"an evil intent, wish, or design to vex, annoy, or injure another person."  Clerk's Papers

(CP) at 53, 57.  Defense counsel argued, "They have to prove beyond a reasonable doubt

that Mr. Lennartz had some kind of an evil design or wish or intent to take that jail out of

service."  RP at 212.

In rebuttal, the prosecutor responded, arguing:

I would urge you to look at what the elements say.  That the defendant
acted knowingly and maliciously.  It does not say that he had to—if we're

---

[2] The unexplained reference to "sharps" might have been to "sporks."  In questioning of Corporal Casey, it was established that inmates are generally allowed to keep a cup and a "spork" (a combination spoon and fork) in their cell.  Corporal Casey testified that he did not believe Mr. Lennartz's breaking the window had resulted in an order that his cup be taken away from him.

5

talking about malice, *it does not have to say he had an evil intent to cause an impairment.* It says his actions had to have an evil intent. His action is breaking the window. We're talking about cause and effect here. His action is breaking the window. The effect is that it caused an impairment. *He doesn't have to have a plan to cause an impairment. He has to have a plan to break that window. He has to have his evil intent to break that window.*

And I submit to you there's no other reason than he wants to break that window other than evil intent to vex, annoy, or injure another person. That's what we're talking about. *His plan doesn't have to be I'm going to take this jail or I'm going to cause an interruption in service, no, I don't think anybody really thinks like that.*

RP at 219-20 (emphasis added).

The jury found Mr. Lennartz guilty as charged. The trial court sentenced him to 16 months (the middle of the standard range) for the malicious mischief, and to 43 months (the high end of the standard range) for the custodial assault, to run concurrently. Mr. Lennartz appeals.

ANALYSIS

Mr. Lennartz makes five assignments of error, all pertaining to his conviction for first degree malicious mischief. We need address only three: his challenge to the sufficiency of the evidence, his claim of prosecutorial misconduct, and his claim of ineffective assistance of counsel. We first address his insufficiency challenge, since a successful challenge would entitle him to dismissal of the charge with prejudice.

6

*The evidence was sufficient*

A person is guilty of first degree malicious mischief if he or she "knowingly and maliciously . . . [c]auses an interruption or impairment of service rendered to the public by physically damaging or tampering with . . . property of the state, a political subdivision thereof, or a public utility." RCW 9A.48.070(1)(b). Mr. Lennartz's challenge to the sufficiency of the evidence is specific: he contends the State's evidence did not support the essential element that he intended to cause an interruption or impairment of service to the public.

When presented with a challenge to the sufficiency of the evidence, we review the evidence in the light most favorable to the State and determine whether any rational trier of fact could have found the elements of the charged crime beyond a reasonable doubt. *State v. Brown*, 162 Wn.2d 422, 428, 173 P.3d 245 (2007). A claim of insufficiency admits the truth of the State's evidence and all reasonable inferences from it. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). In determining whether the necessary quantum of proof exists, we need not be convinced of the defendant's guilt beyond a reasonable doubt but only that substantial evidence supports the State's case. *State v. Galisia*, 63 Wn. App. 833, 838, 822 P.2d 303 (1992), *abrogated on other grounds by State v. Trujillo*, 75 Wn. App. 913, 883 P.2d 329 (1994).

A jury may infer that a defendant acted with intent even when there is no direct evidence. *State v. Bea*, 162 Wn. App. 570, 579, 254 P.3d 948 (2011). "A jury may infer

7

criminal intent from a defendant's conduct where it is plainly indicated as a matter of logical probability. This includes inferring or permissibly presuming that a defendant intends the natural and probable consequences of his or her acts." *Id.* (citations omitted).

The State's evidence was sufficient to persuade a rational juror that Mr. Lennartz intended to break the window. Not only was there evidence that he pounded on the window hard enough to break it, but the State presented evidence that he admitted using a sandal to protect his hand—an unnecessary precaution if he did not believe the window could break. While Mr. Lennartz denied intending to break the window, the jury was entitled to disbelieve him.

The natural and probable consequence of breaking an exterior jail cell window is that the cell will not be usable until the window is repaired. Jurors had heard the exterior window in Mr. Lennartz's cell described as six to seven feet in length, three feet high, made of thick tempered glass, and flanked on the outside by concrete pillars to prevent escape. While the State did not present evidence that Mr. Lennartz was aware of every respect in which jail operations would be interrupted by a broken window, a rational juror could find that Mr. Lennartz would expect that repair of the window would not be easy or quick. This, and the evidence that Mr. Lennartz broke the window in a fit of anger, was sufficient evidence from which the jury could find that he intended to cause an interruption or impairment of service to the public.

*The prosecutor's material misstatement of the law, which was not
objected to by defense counsel, requires reversal*

Mr. Lennartz also contends that the prosecutor committed misconduct when she misstated the law in closing argument, telling jurors that they need not find that Mr. Lennartz intended to cause an interruption or impairment of service to the public in order to convict. Alternatively, he contends that his trial lawyer provided ineffective assistance of counsel by failing to object to the argument. We conclude that both errors arguably occurred; what is clear is that together, they denied Mr. Lennartz a fair trial on the first degree malicious mischief charge.

Prosecutorial misconduct is not attorney misconduct in the sense of violating rules of professional conduct. *State v. Fisher*, 165 Wn.2d 727, 740 n.1, 202 P.3d 937 (2009). It is, instead, a term of art that refers to "prosecutorial mistakes or actions [that] are not harmless and deny a defendant [a] fair trial." *Id.* To succeed on a prosecutorial misconduct claim, an appellant has the burden of establishing that the prosecutor's conduct was improper (as being at least mistaken) and was prejudicial. *State v. Stenson*, 132 Wn.2d 668, 718-19, 940 P.2d 1239 (1997). Where, as here, a defendant fails to object in the trial court to a prosecutor's statements, he waives his right to raise a challenge on appeal unless the remark was so flagrant and ill-intentioned that it evinced an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury. *Id.* at 719.

Washington statutes criminalize three degrees of malicious mischief. RCW

9A.48.070-.090. As this court explained many years ago in *State v. Jury*, what

distinguishes the three degrees of the crime when an offender is alleged to have

interrupted public service is the state of mind required. 19 Wn. App. 256, 267, 576 P.2d

1302 (1978).

> For first-degree malicious mischief, the intent is directed toward
> interrupting public service; for second-degree malicious mischief, the intent
> is directed toward creating a substantial risk of interrupting public service;
> for third-degree malicious mischief, the defendant need only intend to cause
> the physical damage.

*Id.*

In *Jury*, reversible error was found when a jury instruction on first degree

malicious mischief appeared to tie the "knowingly and maliciously" requirement to only

the physical damage caused by the defendant, without requiring the State to prove that

the defendant knowingly and maliciously caused an interruption or impairment of service

rendered to the public. Because the evidence in *Jury* was at best ambiguous as to the

defendant's state of mind, this court held that the instructions "created an obvious

injustice" through a "misstatement of the law [that was] apparent and presumed to have

misled the jury." *Id.* at 268.

The same error was conveyed by the prosecutor's closing argument in this case.

And here, too, the evidence was ambiguous as to Mr. Lennartz's state of mind. The trial

court's decision to instruct the jury on both first and second degree malicious mischief

10

demonstrates as much. Among evidence that would support the lesser crime was Mr.

Lennartz's statement to Corporal Contreras that he did not intend to break the window;

testimony that the windows are not easily broken; and the facts that in the aftermath of

the breakage, he calmed down, was picking up the broken glass, and was compliant with

Corporal Contreras's directions.

A prosecutor's argument must be confined to the law stated in the trial court's

instructions. *State v. Estill*, 80 Wn.2d 196, 199, 492 P.2d 1037 (1972). For a prosecutor

to misstate the law can be a serious irregularity having the grave potential to mislead the

jury. *See State v. Davenport*, 100 Wn.2d 757, 763, 675 P.2d 1213 (1984). The State

concedes that the prosecutor's argument might have reflected a misunderstanding of the

elements of first degree malicious mischief. Br. of Resp't at 13 (describing the rebuttal

argument as "at worst a misunderstanding of the elements"). But it argues that reversal is

not required because the jurors were correctly instructed on the elements required to

convict.

The court's to-convict instruction on first degree malicious mischief was based on

11A *Washington Practice: Washington Pattern Jury Instructions: Criminal* 85.02 at 233-

34 (4th ed. 2016) (WPIC) and correctly stated the law. But given the prosecutor's self-

assured mischaracterization of the knowledge requirement and defense counsel's failure

to object, jurors would likely have accepted the prosecutor's mischaracterization as

correct. Nothing in WPIC 85.02 would have made it obvious to lay jurors that the prosecutor was wrong.

The State also argues that Mr. Lennartz waived the error by failing to object, since the error could have been obviated by a curative instruction. We question whether it could have been easily obviated. Because of the confidence with which the prosecutor argued, nothing short of the trial court bluntly telling jurors that the prosecutor was misstating the law was likely to be effective. Trial courts do not ordinarily intervene in closing argument in such strong terms.

In any event, if reversing requires us to find ineffective assistance of defense counsel, we so find. To demonstrate ineffective assistance of counsel, a defendant must show two things: "(1) defense counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness based on consideration of all the circumstances; and (2) defense counsel's deficient representation prejudiced the defendant, i.e., there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995) (emphasis omitted). The prosecutor clearly misstated the law in a critical respect; defense counsel should have objected. And as in *Jury*, reasonable jurors with a correct understanding might have acquitted Mr. Lennartz of the charge, so the misstatement of the law "created an obvious injustice." Reversal without prejudice is required.

STATEMENT OF ADDITIONAL GROUNDS

Mr. Lennartz filed three statements of additional grounds (SAGs) from which we discern his assertion of four grounds for relief: (1) he claims innocence, (2) the evidence of custodial assault was insufficient, (3) prosecutorial misconduct, and (4) the court's instruction on malicious mischief improperly shifted the burden of proof to him.

*General Claim of Innocence.* Mr. Lennartz asserts his innocence. It is not the function of an appellate court to reweigh evidence. We are not in a position to find innocence where fact-finders who saw and heard the witnesses found guilt. *See Quinn v. Cherry Lane Auto Plaza, Inc.*, 153 Wn. App. 710, 717, 225 P.3d 266 (2009).

*Insufficient Evidence of Custodial Assault.* Mr. Lennartz argues there was insufficient evidence to support the jury's finding that he was guilty of custodial assault. He argues that Corporal Casey's testimony was inaccurate and uncorroborated, and that he accused Mr. Lennartz of something that was not possible.

Corporal Casey testified at trial that Mr. Lennartz threw urine at him through the cuff port. That evidence, if believed by the jury, was sufficient to sustain its guilty finding. Again, in considering a sufficiency challenge, we review the evidence in the light most favorable to the State and do not reweigh evidence.

*Prosecutorial Misconduct and Instruction on Malicious Mischief.* Finally, Mr. Lennartz raises contentions of prosecutorial misconduct and instructional error that were made by his appellate lawyer in the opening brief. Because those issues were adequately

13

addressed by counsel, and because the prosecutorial misconduct challenge proves

dispositive, we need not address the issues further. *See* RAP 10.10(a) (a SAG is afforded

so that a defendant may raise matters that are not adequately addressed by counsel).

We affirm the custodial assault conviction, reverse the first degree malicious

mischief conviction, and remand for proceedings consistent with this opinion.[3]

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Siddoway, J.

WE CONCUR:


_____
Lawrence-Berrey, C.J.


_____
Fearing, J.


---

[3] Our decision renders moot Mr. Lennartz's request that we decline to assess costs on appeal and his motion to supplement his brief to challenge the imposition of the criminal filing fee. He can challenge the fee at resentencing.