# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | | |
|---|---|---|
| STATE OF WASHINGTON, | | No.  50089-2-II |
| Respondent, | | |
| v. | | |
| KENNETH WESLEY CHAPMAN, JR., | | UNPUBLISHED OPINION |
| Appellant. | | |

Lee, J. — Kenneth W. Chapman, Jr. appeals his convictions for attempted first degree rape of a child, attempted commercial sex abuse of a minor, and communicating with a minor for immoral purposes, arguing that the trial court erred by refusing to instruct the jury on entrapment and by accepting the State's affidavit of prejudice.  In a Statement of Additional Grounds (SAG),[1] Chapman claims that the State failed to present sufficient evidence to prove intent and that the officers prematurely arrested him.

We hold that the trial court erred by refusing to instruct the jury on entrapment for the attempted first degree rape of a child and attempted commercial sex abuse of a minor charges, but that the trial court did not err by refusing to instruct the jury on entrapment for the communicating with a minor for immoral purposes charge.  We also hold that Chapman has waived his challenge to the State's affidavit of prejudice and that Chapman's SAG claims fail.  Accordingly, we reverse

---

[1] RAP 10.10.

Chapman's convictions for attempted first degree rape of a child and attempted commercial sex abuse of a minor, affirm his conviction for communicating with a minor for immoral purposes, and remand for further proceedings consistent with this opinion.

FACTS

Chapman was arrested during an undercover police investigation into sexual exploitation of children on the internet. The State charged Chapman with attempted first degree rape of child and commercial sex abuse of a minor. Chapman was arraigned on September 10, 2015.

On November 4, 2015, the State filed an affidavit of prejudice against the judge who presided over Chapman's arraignment. Nothing in the record before us indicates that Chapman objected to the State's affidavit of prejudice. Although there was no hearing on the affidavit of prejudice, the judge against whom it was filed did not hear any further matters in this case.

The State filed an amended information charging Chapman with attempted first degree rape of a child, attempted commercial sex abuse of minor, and communication with a minor for immoral purposes. Chapman's jury trial began on January 19, 2017.

Before opening statements, the State moved to exclude any evidence related to an entrapment defense. At first, the trial court expressed concern about the motion being premature. Specifically, the trial court expressed concern about whether it could exclude an entrapment defense without the defendant testifying. But the State argued,

> Well, I guess the majority—I think the distinction between this case and many other cases in which entrapment occurs is the evidence is primarily already, you know, in the form of text messages. So it's not like there can be a significant difference in terms of, you know, what Mr. Chapman said versus what he didn't say.

> I guess the State's concern is that the defendant, knowing that he can't meet the burden of proof for entrapment to begin with, uses the entrapment defense as a way to get in otherwise inadmissible evidence under the theory that they need to show the defendant's predisposition to commit[] this offense.

I Verbatim Report of Proceedings (VRP) at 119-20. Chapman argued two points to support his position that the officers used inducement. First, he argued there was a two-day break in communications after which officers, not Chapman, reinitiated the contact. Second, Chapman argued there was a significant difference in the interaction and tone of the communication—focused on sex with the adult woman rather than the child—after officers reinitiated contact. The trial court granted the prosecution's motion to exclude evidence related to entrapment.

Sergeant Carlos Rodriguez of the Washington State Patrol testified at trial that he was a detective with the Missing and Exploited Children's Task Force (MECTF). Part of his job is to conduct undercover online investigations to target people who commit crimes against children. Sergeant Rodriguez came into contact with Chapman when Chapman responded to an online ad that Sergeant Rodriguez had posted.

The title of the ad was " 'Close taboo family looking for fun, young.' " VRP (Jan. 30, 2017) at 285-86. The ad read,

> "I am new to area and interested in new friends. I have a very close young family that is very giving. Experience with incest is a plus. Reply if interested. No RP . . . Only serious that want to meet respond. 43 F Bremerton . . . Reply with ASL . . . I can tell you more when you respond. No solicitations, but gifts are welcome. Two dau."

VRP (Jan. 30, 2017) at 287. Sergeant Rodriguez testified that "RP" means role play. VRP (Jan. 30, 2017) at 287-88. "ASL" means age, sex, location. VRP (Jan. 30, 2017) at 287. And "dau"

means daughters. VRP (Jan. 30, 2017) at 287. Sergeant Rodriguez also testified that there was no photograph posted with the ad.

Chapman responded to the ad with an email account listing his name as James Peterson. His response stated, " 'I would love to know more info about what you're looking for. Here's my pic and number.' " VRP (Jan. 30, 2017) at 291. The response included Chapman's phone number and a picture of his penis. Sergeant Rodriguez, as his undercover persona "Shannon," responded to Chapman,

> "This is more for my close family. I can host and make sure they aren't hurt. If you are serious and want to experience what my youthful, close family has to offer, then respond back. I am very careful about who I meet, and very discreet. If you want to taste true innocence, then this is for you. Two daus, 11/7. Tell me what you want."

VRP (Jan. 30, 2017) at 292. Chapman responded, " 'Sounds fun. Tell me more. Do you have pics?' " VRP (Jan. 30, 2017) at 293. "Shannon" declined to send pictures and moved the conversation off of email and to text messaging.

"Shannon" communicated with Chapman for the next couple days attempting to arrange an encounter between Chapman and her fictional 11-year-old daughter "Brooke." Chapman repeatedly tried to get "Shannon" to send pictures or describe sex acts over text messages. "Shannon" responded by focusing on arranging the encounter with "Brooke:"

> "[Chapman], I like you, but you are like a little puppy that needs too much attention that I don't have time for. If you want to sleep with brooke then we can do that. Is that clear enough. She is ready right now ill try for tomorrow [sic].
>
> . . . .
>
> . . . [Chapman], we are going down that road again. If you want it get your ass over here. If not then hopefully we are here tomorrow.

. . . .

. . . I'm a busy lady brooke is free well not free, but she has time."

VRP (Jan. 30, 2017) at 326, 329, 331 (second alteration in original). Chapman engaged in negotiations regarding "roses" for time with "Brooke." VRP (Jan. 30, 2017) at 333-336. Sergeant Rodrgiuez testified that "roses" is "commonly a term used when people are exchanging money in exchange for a sex act." VRP (Jan. 30, 2017) at 332. Chapman agreed to bring " 'some Xbox games and small amount of roses.' " VRP (Jan. 30, 2017) at 335. Chapman later clarified that he would bring " '3 connect games and 50 roses.' " VRP (Jan. 30, 2017) at 335.

When Chapman began discussing sending pictures again, "Shannon" accused him of not being serious about the encounter. Chapman responded, " 'If you feel like you can't respect me then you and your family can get lost good bye.' " VRP (Jan. 30, 2017) at 336. There was no communication between Chapman and "Shannon" for the next two days.

"Shannon" reinitiated the contact with Chapman. "Shannon" reinitiated the contact by stating that "Brooke" really wanted to meet with Chapman. They arranged a meeting for the next day. At one point "Shannon" texted, " 'Yo ukeep [sic] talking about [m]e, are you only interested in me.' " VRP (Jan. 30, 2017) at 344 (first alteration in original). Chapman responded, " 'No I just want to make sure you['re] happy for starters then everyone else would just trying to figure out what you both like.' " VRP (Jan. 30, 2017) at 344. Chapman then discussed whether he had to use a condom. When "Shannon" responded, " 'I can't have a prego kid,' " Chapman responded, " 'I think it would be really hot,' " and " 'I understand well it's up to you maybe a couple of strokes raw.' " VRP (Jan. 30, 2017) at 344. "Shannon" responded, "With brooke ok, if you have papers.

5

Im fixed so if yo uhave [sic] papers we can do that after I know she is taken care of if you do a good job." VRP (Jan. 30, 2017) at 344 (alterations in original.)

Chapman drove to a gas station near the apartment Sergeant Rodriguez used for the operation. "Shannon" asked Chapman to pick up candy and an energy drink for "Brooke." Leading up to the meeting, Chapman continued to text with "Shannon" about the upcoming sexual encounter. At one point, Chapman texted, " 'I asked you Only if you promise I can cum deep in your pussy.' " VRP (Jan. 30, 2017) at 357. "Shannon" responded, " 'Oh yeah. In mine yes if yo uhave the papers like you said. In brooke though on ly a few strokes like you said right??' " VRP (Jan. 30, 2017) at 357.

Sergeant Rodriguez informed the arrest team he had probable cause to arrest Chapman in the parking lot outside the apartment. The arresting officers saw in plain view candy, an energy drink, and a bottle of wine in Chapman's car.

Sergeant Rodriguez also testified that Chapman engaged in two phone calls with law enforcement officers pretending to be "Shannon" and "Brooke." The first conversation occurred before Chapman terminated contact. Chapman spoke with the detective pretending to be "Shannon" to discuss the rules of his sexual contact with "Brooke." Chapman also spoke with a trooper pretending to be "Brooke." Chapman made comments to "Brooke" about certain sex acts he wanted to perform with her. The second phone call occurred just after Chapman arrived at the apartment complex and before he was arrested. During the call, Chapman spoke with "Brooke" who attempted to get Chapman to come to that apartment. Chapman wanted "Shannon" to come meet him at the car.

Chapman testified at trial. Chapman testified that the online ad he responded to had a picture and that he responded to the ad because he was attracted to the woman in the picture. Chapman admitted that he engaged in inappropriate discussion about sex with a child:

> It was just various subjects just kind of gauging what she likes to hear, so honestly I was just telling her what she would like to hear to see if the conversation went further. So I was just kind of gauging seeing what she was talking about. It was definitely inappropriate. I own up to that. Absolutely.

VRP (Feb. 1, 2017) at 618. Chapman also testified that he engaged in the conversation after "Shannon" reinitiated contact because "she started using terms like 'bae' and, you know, really started getting excited when we talked about sex between us." VRP (Feb. 1, 2017) at 623. Chapman admitted the conversation was usually redirected back to the children, but he continued the conversation because he did not know if there were any actual children or if it was just something "Shannon" liked.

Chapman further testified about the discussions regarding money and gifts, stating that "Shannon" tried to get Chapman to pay $50-$150 for the children, but he was not interested in the children, so he "wasn't going to bring that amount." VRP (Feb. 1, 2017) at 625. Instead, Chapman brought with him to his meeting with "Shannon" the $40 that he had in his car. Chapman also brought a bottle of wine, marijuana, an energy drink, and some candy. The candy was for "Shannon's" kids.

Chapman explained that when he arrived at the apartment, he tried to get "Shannon" to come down and meet him, but he was arrested in the parking lot. He testified that he was already getting ready to leave because the situation "was super weird." VRP (Feb. 1, 2017) at 631. He stated that, if "Shannon" had come down and been unattractive, he also would have just left.

7

Chapman also stated that he never intended to have sex with an 11-year-old. Chapman went to the apartment to have sex with "Shannon" based on her promise that he could come inside her vagina.

Chapman also testified that, although he told "Shannon" on multiple occasions he was unavailable to meet her because he was working, he was actually in school and did not have a job. He testified he could have met with "Shannon" at any time but he was not interested because she did not promise to have sex with him. And he ended the initial interaction because "Shannon" did not seem interested in him.

During rebuttal testimony, Sergeant Rodriguez testified that he had contacted the website where he posted the ad and confirmed that there was no photograph posted with the original ad. Sergeant Rodriguez admitted that he did not take a screenshot of the original ad.

After testimony concluded, Chapman renewed his request for a jury instruction on entrapment. Chapman again argued that an entrapment instruction was appropriate because Sergeant Rodriguez, as his undercover persona "Shannon," was the one who reinitiated the contact and there was a greater emphasis on sex with "Shannon" after contact was reinitiated. The State argued that Chapman's argument was relevant to intent, not entrapment, and an entrapment instruction was not warranted. The trial court denied Chapman's request for a jury instruction on entrapment.

The jury found Chapman guilty of attempted first degree rape of a child, attempted commercial sexual abuse of a minor, and communicating with a minor for immoral purposes. The trial court imposed a standard range sentence of 121.5 months confinement.

Chapman appeals.

ANALYSIS

A.    ENTRAPMENT

Chapman argues that the trial court erred by refusing to instruct the jury on the defense of entrapment. With regard to the attempted first degree rape of a child and attempted commercial sexual abuse of a minor charges, we agree. With regard to the communicating with a minor for immoral purposes charge, we disagree.

The defense of entrapment is codified in RCW 9A.16.070, which states,

> (1) In any prosecution for a crime, it is a defense that:
> (a) The criminal design originated in the mind of law enforcement officials, or any person acting under their direction, and
> (b) The actor was lured or induced to commit a crime which the actor had not otherwise intended to commit.
> (2) The defense of entrapment is not established by a showing only that law enforcement officials merely afforded the actor an opportunity to commit a crime.

Entrapment is an affirmative defense, and the defendant bears the burden of proving entrapment by a preponderance of the evidence. *State v. Lively*, 130 Wn.2d 1, 13, 921 P.2d 1035 (1996) ("Defendants should ultimately be responsible for demonstrating that they were improperly induced to commit a criminal act which they otherwise would not have committed.").

The use of a "normal amount of persuasion to overcome the defendant's expected resistance" is not entrapment. *State v. Trujillo*, 75 Wn. App. 913, 918, 883 P.2d 329 (1994), *review denied*, 126 Wn.2d 1008 (1995). Police may also use deception, trickery, or artifice. *Id*. And solicitations " 'made in connection with an appeal to sympathy or to friendship' does not, by itself, constitute entrapment." *State v. Smith*, 101 Wn.2d 36, 43, 677 P.2d 100 (1984). "In order to show

entrapment, a defendant must show more than mere reluctance on his or her part to violate the law." *Trujillo*, 75 Wn. App. at 918.

To be entitled to an instruction on the defense of entrapment, "a defendant must present evidence which would be sufficient to permit a reasonable juror to conclude that the defendant has established the defense of entrapment by a preponderance of the evidence." *Id*. at 917. We review a trial court's factual determination of whether a jury instruction should be given for an abuse of discretion. *State v. Condon*, 182 Wn.2d 307, 315-16, 343 P.3d 357 (2015).

    1.   Attempted First Degree Rape of a Child/Attempted Commercial Sexual Abuse of a Minor

The State has conceded that the attempted commercial sex abuse of a minor and the attempted rape of a child were not committed until Chapman drove to Kitsap County. Wash. Court of Appeals oral argument, *State v. Chapman*, No. 50089-2-II (Sept. 14, 2018), at 15 min., 27 sec. through 15 min., 37 sec. (on file with court). At trial, Chapman presented evidence that he was induced to drive to Kitsap County because of "Shannon's" promises to have sex with him. And Chapman presented evidence that he did not otherwise intend to commit the crime because, during earlier communications—without the promises of sex with "Shannon"—Chapman declined to drive to Kitsap County.[2]

---

[2] Chapman encourages us to adopt the federal standard which requires demonstrating that the defendant was predisposed to commit the crime *before* the criminal acts were committed. We decline to make such a holding and, instead, rely on the plain language of the statute defining entrapment, which requires the defendant to show he did not otherwise intend to commit the crime charged. RCW 9A.16.070.

Because Chapman presented evidence that shows he was improperly induced to commit a crime he did not otherwise intend to commit, Chapman met his burden to be entitled to a jury instruction on entrapment for the attempted commercial sex abuse of a minor and the attempted rape of a child charges. Therefore, the trial court abused its discretion in finding that the evidence did not support giving Chapman's proposed entrapment instruction for the attempted commercial sex abuse of a minor and the attempted rape of a child charges.

2. Communicating with a Minor for Immoral Purposes

With regard to the communicating with a minor for immoral purposes charge, Chapman failed to meet his burden to show he was entitled to a jury instruction on entrapment. Chapman only identified two facts that supported his claim of entrapment. First, that Sergeant Rodriguez, as his undercover persona "Shannon," reinitiated contact with him. Second, that after contact was reestablished, "Shannon" expressed more interest in engaging in a sexual relationship with him herself. But it is not entrapment simply because a law enforcement officer or informant repeatedly solicits the criminal conduct. *See Trujillo*, 75 Wn. App. at 915-17 (holding that although police informant made numerous requests for drugs, conduct did not entitle defendant to an entrapment defense).

Here, the evidence showed that law enforcement merely provided Chapman an opportunity to commit a crime when it posted the online ad that Chapman responded to. "Shannon's" initial response to Chapman made it clear that the subject of the encounter was her daughters rather than herself. And Chapman engaged in a conversation with a trooper posing as "Brooke" regarding sexual acts *before* Chapman terminated contact. Therefore, Chapman's argument that he was

11

entrapped when Sergeant Rodriguez reinitiated contact with him does not apply to the communicating with a minor for immoral purposes charge.

Thus, Chapman did not present sufficient evidence to permit a reasonable juror to conclude that he was entrapped on the communicating with a minor for immoral purposes charge. Therefore, Chapman was not entitled to an entrapment instruction on that charge, and the trial court did not abuse its discretion by declining to give Chapman's proposed entrapment instruction on the communicating with a minor for immoral purposes charge.

B.    AFFIDAVIT OF PREJUDICE

Chapman argues that the trial court erred by accepting the State's affidavit of prejudice because the trial court had already made a discretionary ruling in the case. We decline to consider this argument.

Our record does not show that Chapman objected to the State's affidavit of prejudice at the trial court. "The general rule is that appellate courts will not consider issues raised for the first time on appeal." *State v. Gentry*, 183 Wn.2d 749, 760, 356 P.3d 714 (2015); RAP 2.5(a). Although RAP 2.5(a)(3) provides an exception for manifest errors affecting a constitutional right, our Supreme Court has held that errors related to affidavits of prejudice under RCW 4.12.050 arise from statute and, therefore, are "not of constitutional dimension." *Gentry*, 183 Wn.2d at 760. Because the record does not show that Chapman objected to the State's affidavit of prejudice and he is not raising an issue affecting a constitutional right, we decline to consider his argument made for the first time on appeal that the trial court erred by accepting the State's affidavit of prejudice.

C.    SAG

1.    Sufficiency of the Evidence – Intent

Chapman asserts that the State could not prove his "true intent" because the State did not present the original version of the online ad Sergeant Rodriguez had posted. SAG at 1 (Ground 1). Because the State presented sufficient evidence to prove Chapman's intent without the original version of the ad, Chapman's claim fails.

Evidence is sufficient to support a conviction if, viewing the evidence in the light most favorable to the State, any rational trier of fact can find the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). All reasonable inferences from the evidence are drawn in favor of the State and interpreted most strongly against the defendant. *Id*. A claim of insufficiency of the evidence "admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Id*. Circumstantial and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). "Credibility determinations are for the trier of fact and cannot be reviewed on appeal." *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

To prove criminal attempt, the State must prove that the defendant had the specific intent to commit the attempted offense. RCW 9A.28.020(1). Therefore, for attempted first degree rape of a child, the State had to prove that Chapman had the specific intent to have sexual intercourse with another who is less than twelve years old. RCW 9A.44.073(1). And for attempted commercial sexual abuse of a minor the State had to prove that Chapman had the specific intent to solicit, offer, or request to engage in sexual conduct with a minor in return for a fee. Former RCW

9.68A.100(1)(c) (2013). A person is guilty of communicating with a minor for immoral purposes if he communicates with someone he believes to be a minor for immoral purposes. RCW 9.68A.090.

Chapman appears to claim that the original online ad would have demonstrated his intent to communicate with an adult woman for sex because the original online ad contained a picture of an adult woman. But copies of the online ad were attached to emails that were admitted at trial. And Sergeant Rodriguez testified that the online ad company confirmed the original ad did not include a picture. Although Chapman testified that he responded to an ad with a picture, this is an issue of credibility for the jury and not for us to review on appeal.

Moreover, even without the original online ad, the State presented sufficient evidence to prove Chapman's intent beyond a reasonable doubt. The State presented extensive text messages in which Chapman repeatedly made explicit statements about engaging in sex acts with the fictional 11-year-old "Brooke." And Chapman admitted that he engaged in negotiations about exchanging money and gifts for sex with "Brooke." Again, although Chapman testified that he did not intend to follow through with those statements, that is an issue of credibility for the jury to decide. Based on the jury's verdict, the jury determined that the text messages, rather than Chapman's trial testimony evidenced his true intent. We will not review the jury's credibility determinations on appeal. Therefore, Chapman's argument challenging the sufficiency of the evidence supporting intent fails.

2.     PREMATURE ARREST

Chapman also claims that his arrest was premature because a crime had not been committed yet. Because there was probable cause to support Chapman's arrest, the arrest was not premature.

" 'Probable cause to arrest exists where the totality of the facts and circumstances known to the officers at the time of arrest would warrant a reasonably cautious person to believe an offense is being committed.' " *State v. Gillenwater*, 96 Wn. App. 667, 670, 980 P.2d 318 (1999) (internal quotations omitted) (quoting *O'Neill v. Dep't of Licensing*, 62 Wn. App. 112, 116-17, 813 P.2d 166 (1991)). "Probable cause is determined by considering the total facts of each case, viewed in a practical, nontechnical manner." *Gillenwater*, 96 Wn. App. at 671.

First degree rape of a child is sexual intercourse with a child under twelve years old. RCW 9A.44.073(1). "A person is guilty of an attempt to commit a crime if, with intent to commit a specific crime, he or she does any act which is a substantial step toward the commission of that crime." RCW 9A.28.020(1).

At the time of the arrest, Chapman had engaged in several text message communications negotiating a sexual encounter with 11-year-old "Brooke." And after Chapman had agreed to obtain alcohol, marijuana, money, candy, and an energy drink to engage in the sexual encounter, he arrived at the parking lot of the apartment where he anticipated meeting "Shannon" and "Brooke." Based on the facts and circumstances known to Sergeant Rodriguez, a reasonably cautious person would believe that Chapman arrived at the apartment with the intent to have sex with an 11-year-old girl. And Chapman took several substantial steps by driving to the apartment complex and obtaining drugs, candy, and an energy drink. This provides probable cause to arrest

No. 50089-2-II

Chapman for attempted first degree rape of a child. Because Sergeant Rodriguez had probable cause to believe Chapman had committed attempted first degree rape of a child, the arrest was not premature. Therefore, Chapman's claim fails.

We reverse Chapman's conviction for attempted first degree rape of a child and attempted commercial sex abuse of a minor, affirm his conviction for communicating with a minor for immoral purposes, and remand for further proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Bjorgen, P.J.

Maxa, C.J.