# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 57415-2-II |
| Respondent, | |
| v. | |
| JORGE HERNANDEZ MENDIETA, | UNPUBLISHED OPINION |
| Appellant. | |

VELJACIC, J. — Jorge Hernandez Mendieta seeks discretionary review of the superior court's motion to dismiss. He argues that the State presented insufficient independent evidence to establish the corpus delicti of possession with intent to deliver. Because the State proved more than one additional factor corroborating Hernandez Mendieta's statement, we affirm.

FACTS

I. BACKGROUND

On November 18, 2019, the State charged Hernandez Mendieta with one count of possession of methamphetamine with intent to manufacture or deliver.

The State laid out the facts leading to the charges in its statement of probable cause. The statement of probable cause noted that in the afternoon of October 15, 2019, Sergeant Steven Forbragd was working as part of the traffic unit when he "observed" that the passenger side brake light was broken and was "emitting a bright white light to the rear of the vehicle." Clerk's Papers (CP) at 4. Forbragd also saw a trip permit on the back window with the date of "10/17/19." CP at 4. Forbragd stopped the vehicle and contacted Hernandez Mendieta. Hernandez Mendieta told

Forbragd that he had recently purchased the vehicle. However, Forbragd noticed there was plastic over the trip permit and that it "had been rewritten on to change the date several times." CP at 4.

Forbragd noted Hernandez Mendieta had to open his door to talk. During the conversation, Forbragd noticed an odor coming from the vehicle. From his experience, the odor was associated with heroin. He requested Hernandez Mendieta remove the trip permit and hand it over, which he did. Seeing that the permit was invalid, Forbragd arrested Hernandez Mendieta. He then asked Hernandez Mendieta if there was anything illegal in the car. Hernandez Mendieta replied that there was nothing illegal in the vehicle but that there may be some kind of trap door in the trunk of the vehicle, and said that Forbragd could search the car but trailed off at the end. Consequently, Forbragd asked for consent to search the vehicle, with Hernandez Mendieta responding, "what are you searching for?" CP at 5. Forbragd told him they would be looking for anything illegal, such as "dope and guns." CP at 5.

Washington State Patrol K9 Trooper Green and his partner Max arrived and assisted with the search of the vehicle. There was a positive alert on the vehicle, and Forbragd's partner, Brandon Greenhill, located a backpack on the backseat with a Tylenol bottle and Dove deodorant inside. Inside the Tylenol bottle was one baggie with a brownish-whiteish powder-like substance inside, which Forbragd suspected to be either cocaine or fentanyl. As for the deodorant, it was hollowed out and held two more large baggies with a brown powder substance and a crystal-like substance, which from Forbragd's experience, he suspected to be heroin and crystal methamphetamine (crystal meth). The search also revealed a second invalid trip permit in the driver's door.

Forbragd asked Hernandez Mendieta about the backpack and items found. Hernandez Mendieta stated the backpack was not his, nor were the tools, but that the drugs were, and he put them in the backpack to hide them. Forbragd then asked Hernandez Mendieta what the substances were. Hernandez Mendieta replied that the brownish colored powder was heroin and the white powder was fentanyl, which was given to him the last time he bought heroin. Hernandez Mendieta added that he purchased the drugs for $300 and was going to sell them to double his money as he "doesn't f[***] with the stuff. [He] just ha[s] a side hustle." CP at 5.

Forbragd placed the drugs and permits into evidence. The drugs were sent to the crime laboratory for testing, and Forbragd wrote a report. Testing revealed that the crystal-like substance was 28 grams of methamphetamine. Testing also revealed the light-brown powder was 10 grams of heroin. However, the brownish-white powder was not tested.

## II.    PRETRIAL MOTION AND HEARING

On May 31, 2022, Hernandez Mendieta filed a *Knapstad*[1] motion to dismiss the charges, arguing the State lacked independent evidence necessary to corroborate his incriminating statements and establish the corpus delicti of possession with intent to deliver. The superior court held a motion hearing, where the State presented testimony from Forbragd. Forbragd added other details.

First, Forbragd outlined his years of training that included over 80 hours of basic Drug Enforcement Administration classes on how to identify drugs and drug dealing. He also testified that he is a certified drug recognition expert and instructor, teaching hundreds of hours of classes statewide for impaired driving; that he is comfortable identifying when someone is under the

---

[1] *State v. Knapstad*, 107 Wn.2d 346, 729 P.2d 48 (1986).

influence of methamphetamine, heroin, and fentanyl; and that he had been involved with nearly a thousand drug-related investigations.

When asked if someone possesses a controlled substance, whether that always means they intend to deliver, Forbragd responded no, but there are factors that distinguish whether someone is personally using or dealing. He elaborated, saying that to determine whether someone intends to deal or use personally, he looks at the quantity, the different types of drugs, paraphernalia, packaging, scales, the history of the person, their statements regarding what they are doing, and money involved.

As for the drugs found, Forbragd said he did not know why the crime laboratory did not test the third baggie with the brownish-white powder. However, based on his experience, given it was suspected to be fentanyl, laboratories "weren't testing fentanyl because it's so dangerous," and if something was labeled as fentanyl, they "wouldn't test it unless it was specifically requested."

Next, Forbragd added that during the search no money was found. But that was typical, especially if the individual had just purchased drugs because they typically wanted to avoid carrying money around as they could be robbed or stopped by police. Forbragd also conceded that the search did not reveal any scale, ledgers, or paraphernalia. Forbragd stated that he did not expect to see a scale under the circumstances.

Lastly, Forbragd highlighted that, in this case, he did not believe Hernandez Mendieta possessed the drugs for personal use because, in his experience, finding three different hard drugs in the amount found is not typical for personal use.

4

Moreover, Forbragd noted that with drugs like heroin, users are "gonna use it to keep from getting sick or to get that high that they need, because if they don't, they're going to go through withdrawals pretty frequently." Rep. of Proc. (RP) at 26. Similarly, users of methamphetamines are "looking for that euphoric feeling every time they take a hit of it or inject it and they want to have that high as quick as they can get it." RP at 26. And although he conceded that an individual could use both crystal meth and heroin, it was not common. Finally, he stated that at the time of the incident and arrest, Hernandez Mendieta did not appear to be under the influence. Therefore, he did not believe Hernandez Mendieta was personally using the drugs found.

The superior court denied Hernandez Mendieta's motion to dismiss. In its oral ruling, the court reinforced the corpus delicti rule, noting that corroborating evidence need not be sufficient to establish that a crime has been committed beyond a reasonable doubt or even a preponderance of the evidence. Therefore, the question before the court was whether the amount of drugs combined with an additional factor is sufficient to reasonably infer possession with the intent to deliver. The court then highlighted that case law provides examples of such factors. The court stated that it did not "think" the factors in case law are "exclusive," and it is important to consider Forbragd's expertise when making its decision. RP at 69. Ultimately, the court determined that two additional factors—the three different types of drugs found and one not in the typical form for personal use—established prima facie showing of corpus delicti.

Hernandez Mendieta filed a timely motion for discretionary review, which this court granted.

5

ANALYSIS

I.     CORPUS DELICTI

Hernandez Mendieta argues there was insufficient evidence to establish the corpus delicti of possession with intent to deliver, and therefore, his statements to the arresting officer are inadmissible.   The State counters, arguing that it presented evidence of intent which was corroborated by three additional factors: (1) Hernandez Mendieta was in possession of a large quantity of methamphetamine and heroin, (2) the heroin seized was in a form not typically associated for personal use, and (3) there was a lack of paraphernalia for personal use.

A.     Corpus Delicti in Washington

"Corpus delicti means the 'body of the crime.'"  *State v. Brockob*, 159 Wn.2d 311, 327, 150 P.3d 59 (2006) (internal quotation marks omitted) (quoting *State v. Aten*, 130 Wn.2d 640, 655, 927 P.2d 210 (1996)).  Corpus delicti is both a rule of sufficiency and a rule of evidence.  *State v. Cardenas-Flores*, 189 Wn.2d 243, 256, 401 P.3d 19 (2017).

"A defendant's incriminating statement alone is not sufficient to establish that a crime took place."  *Brockob*, 159 Wn.2d at 328 (internal footnote omitted).  For a defendant's statement to be considered, the State must provide independent corroborating evidence.  *Id.*  The doctrine of corpus delicti ensures that the particular crime described by the defendant in an incriminating statement "actually occurred."  *Id*.

"The independent evidence need not be of such a character as would establish the corpus delicti beyond a reasonable doubt, or even by a preponderance of the proof.  It is sufficient if it prima facie establishes the corpus delicti."  *State v. Meyer*, 37 Wn.2d 759, 763-64, 226 P.2d 204 (1951) (emphasis omitted).  "Prima facie corroboration . . . exists if the independent evidence supports a 'logical and reasonable inference' of the facts" the State seeks to prove.  *Brockob*, 159

Wn.2d at 328 (internal quotation marks omitted) (quoting *Aten*, 130 Wn.2d at 656). Mere possession does not raise the inference of the intent to deliver. *State v. Cobelli*, 56 Wn. App. 921, 925, 788 P.2d 1081 (1989)).

In determining the sufficiency of independent evidence under the corpus delicti rule, "we assume the 'truth of the State's evidence and all reasonable inferences from it in the light most favorable to the State.'" *Cardenas-Flores*, 189 Wn.2d at 264 (quoting *Aten*, 130 Wn.2d at 658). Our review of the sufficiency of the evidence for purposes of corpus delicti is de novo. *State v. Green*, 182 Wn. App. 133, 143, 328 P.3d 988 (2014).

There are "three specific requirements for establishing corpus delicti in possession with intent cases in Washington: (1) 'the evidence must independently corroborate, or confirm, a defendant's incriminating statement," (2) the independent evidence "must be consistent with guilt and inconsistent with a[] hypothesis of innocence," and (3) the evidence must corroborate "not just a crime but the specific crime with which the defendant has been charged." *Sprague*, 16 Wn. App. 2d at 226 (internal quotation marks omitted) (alteration in original) (quoting *Brockob*, 159 Wn.2d at 328-29)..

B.    The State Presented Sufficient Prima Facie Evidence Satisfying Corpus Delicti

It is well established that the amount of drugs alone is insufficient to support an inference of intent to deliver. *Sprague*, 16. Wn. App.2d at 230. Consequently, the fact that Hernandez Mendieta possessed 28 grams of crystal meth, 9 grams of heroin, and 11 grams of another substance is alone insufficient to establish corpus delicti.

The State emphasizes that we must view the evidence in the light most favorable to the State, and that the evidence need only support a logical and reasonable inference of the facts sought to be proved. That is correct. However, the analysis also requires us to consider whether the evidence is sufficient to corroborate the crime charged.

Here, when the evidence is viewed in the light most favorable to the State and all reasonable inferences are construed in the State's favor, there was more than the mere quantity of drugs Hernandez Mendieta possessed to support the corpus delicti of the crime charged. First, the heroin was in a powder form and not tar, which is uncommon if intended for personal use. This was further supported by Forbragd's testimony. Second, no personal use paraphernalia was found. Lastly, the fact that methamphetamine and heroin were found together, in large quantities, coupled with Forbragd's testimony that it is uncommon to use methamphetamine and heroin together, is sufficient to satisfy the low burden of corpus delicti. And although "an officer's opinion on what quantity of a controlled substance is 'normal for personal use' cannot alone support an inference of intent to deliver," Forbragd's additional opinions regarding the nature of the drugs seized is sufficient to satisfy the low burden under corpus delicti. *Sprague*, 16 Wn. App. 2d at 233-34 (quoting *State v. Hutchins*, 73 Wn. App. 211, 217, 868 P.2d 196 (1994))); *State v. Arbogast*, 199 Wn.2d 356, 370, 506 P.3d 1238 (2022) (quoting *State v. Trujillo*, 75 Wn. App. 913, 917, 883 P.2d 329 (1994) (describing Corpus delicti as a "mere scintilla" of evidence)). Accordingly, the State presented sufficient corroborating evidence to establish corpus delicti in this possession with intent to deliver case.[2]

---

[2] Mendieta also challenges the superior court's findings of fact and conclusions of law related to the corpus delicti issue (finding of fact VI and conclusions of law VIII and IX). Br. of Appellant at 13. Because we conclude, on the facts presented, sufficient evidence establishes corpus delicti, it necessarily follows that these findings of fact are supported by substantial evidence, which in turn support the superior court's conclusions of law.

CONCLUSION

The superior court did not err when denying Hernandez Mendieta's motion to dismiss. We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Veljacic, J.

We concur:

_____
Lee, P.J.

_____
Price, J.